ALLEN ESTATE ASSOCIATION, Appellant, v. FRED BOEKE & SON et al.

Division Two, October 4, 1923.

1. **MECHANIC'S LIEN: Liability of Lessor: Written Agreement.** The right of the contractor to a mechanic's lien for improvements made upon property under a contract made with the lessee cannot be determined solely by the lease contract by which it was agreed that the lessor should in no wise be liable for repairs or improvements made thereon, but that all persons doing works or furnishing materials should look to the lessee alone for payment; but all the facts connected with the lease, and the circumstances under which and the purposes for which it was made, should be considered in determining the right.

2. ———: ———: **For Improvements Contemplated.** Whenever the lessor, in making a long-term lease, binds or obligates the lessee to construct permanent and substantial improvements beneficial to his reversionary interest, the contractor who makes such specific improvements under a contract with the lessee is entitled to a mechanic's lien against such reversionary interest.

3. ———: ———: ———: **Ultimate Benefit.** The lessee as such is not the agent of the lessor to the extent that he may establish a lien against the land for improvements made for his own benefit and at his own cost, but if it appears that the lessor has obligated the lessee to construct permanent and substantial improvements upon the premises beneficial to the lessor, those persons furnish-

ing materials or labor for such improvements, by virtue of a contract with the lessee, are entitled to mechanic's liens against the lessor's reversionary interest; and, the ninety-nine year lease having been forfeited by the lessor who went into possession soon after the improvements were made, it is immaterial whether the lessor was ultimately benefited by the improvements.

4. ————: **Estoppel: Bond for Protection.** A bond given by the contractor to the lessor and lessee to protect them against mechanic's liens is to be construed as a contract to protect them against liens by sub-contractors, materialmen and laborers, and not as a surrender of the contractor's right to a mechanic's lien; and such bond does not operate to estop the contractor from enforcing his lien where the work was done and the materials furnished by him, there being no basis for a counterclaim or set off.

5. ————: **Waiver: Agreement to Accept Notes in Payment.** The contractor's lien is not waived by an agreement to accept notes in payment for the buildings constructed by him unless the notes, though issued and accepted, are paid. If the contractor has bestowed his labor and materials upon the improvements until he has completely performed his contract, a statutory lien in his favor at once arises; and if the owner has not in any way actually paid for the labor and materials, it is immaterial in what way he promised to pay, but the contractor may avail himself of the security the statute creates for him.

6. ————: **Subrogation: Release of Sureties.** The lessee as principal and a bonding company as surety gave bond to the contractor, conditioned that from time to time the lessee would deliver to the contractor and to sub-contractors certain notes of the lessee, indorsed by the bonding company. Construction notes, indorsed by the bonding company, were issued by the lessee, to the contractor, to the amount of $28,632.76, of which amount $22,632.76 were held by a bank, which has obtained judgment thereon against the bonding company. Sub-contractors held similar notes aggregating $54,271, in which the contractor never claimed and does not now claim any interest. Under these circumstances the contractor, by written instrument reciting these facts, released and discharged the bonding company from all claims he ever had or may ever have against it, excepting his claim to the $22,632.76 held by said bank, and agreed to turn over and surrender the remaining $6,000 note held by him. *Held,* that the lessor is not subrogated to the rights of the contractor on said bond, nor does the release agreement either destroy the contractor's lien or warrant a credit thereon to the extent of the security surrendered, since the only right of the contractor against the bonding company at the time of the release was on the $6,000 note, and in filing his lien he had credited on his claim all construction notes received by him, includ-

ing the six-thousand-dollar note, and the lessor had no interest in the security for that note and has lost nothing, so far as the claim of the contractor is concerned, by the release of the bonding company.

7. ———: **Spoliation of Contracts with Others.** The right of one contractor to a mechanic's lien is in no way affected by an unauthorized alteration of the contracts with other contractors.

8. ———: ———: **Before Execution.** Where there is affirmative proof that the alterations in the contract were made before their execution, and no witness testifies that the words inserted were not in the contracts at the time they were signed, the court will not infer fraud from the mere fact that the added words appear on the face of the instruments, but will follow the general rule, namely, that where a transaction may as well consist with honest and fair dealing as with a fraudulent purpose, it will be referred to the better motive.

9. ———: **Witness: Inspector for Architect: Conversations with Deceased Party.** The inspector of the architect, who was the general superintendent of the lessee who made the contract for the construction of the improvements, is competent to testify to a conversation he heard between the architect and the deceased president of plaintiff corporation, the lessor of the premises. He is not incompetent; because not an interested person within the meaning of the statute, and because he was not a party to the conversation with the president.

10. ———: ———: **Sub-Contractors: For Other Claimants.** Subcontractors and lienors are not competent to testify in support of their own claims, where the other party to the contract is dead, but they are competent to testify in the suits of other claimants. And where their claims are separate and distinct they are not incompetent to testify on behalf of other lienors or on behalf of each other, by the fact that plaintiff, under the statute (Sec. 7240 et seq.) authorizing all claims under the mechanic's lien statute to be consolidated in one suit in equity, has, in opposing the establishing of their liens, joined all claimants as defendants.

11. ———: ———: **Enabling Statute: Section 5410.** The statute (Sec. 5410, R. S. 1919) declaring that no person shall be disqualified to testify in any civil suit by reason of his interest in the event as a party or otherwise, disqualified no one who was a competent witness at common law, but, on the contrary, it is remedial in its

nature, its object being to remove a disability theretofore existing at common law, and its proviso creates no disability, but only limits the operation of the enabling provision.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Leahy, Saunders & Walther, Virgil Rule* and *Harding, Murphy, Stinson & Tucker* for appellant.

(1)   The court erred in holding that the Ottawa Realty Company was the agent of the Allen Estate Association within the meaning of the Mechanic's Lien Law, even as to the alterations and repairs required by the lease, and that the work done by the respondents or any of them was done for the immediate use, enjoyment or benefit of the Allen Estate Association so as to make its reversionary interest in the leased property liable to a lien. Secs. 7216, 7220, R. S. 1919; Dierks & Son Lumber Co. v. Morris, 170 Mo. App. 212; Winslow Brothers v. McCully Co., 169 Mo. 236; Jones on Liens, sec. 1277; Albaugh v. Company, 14 App. D. C. 120; Harmon v. Allen, 11 Ga. 45; Langley v. D'Angigne, 31 App. D. C. 409; Valeria v. Ingersoll, 14 Col. App. 240; Conant v. Brack-ett, 112 Mass. 18; Roth v. Villingsrath, 71 Ala. 55; Gaskell v. Trainor, 3 Cal. 333; McCarthy v. Burnett, 81 Ind. 23; McClintock v. Creswell, 67 Pa. St. 183; Boone v. Chatfield, 118 N. C. 916; McGreary v. Osborne, 9 Cal. 119; Boisot on Mechanic's Liens, sec. 130; 20 Am. & Eng. Ency. Law (2 Ed.) 320; Block v. Murray, 12 Mont. 545; Morrow v. Merritt, 16 Utah, 412; Marty v. Amusement Co., 173 Mo. App. 707. (2)   The court erred in holding that the Ottawa Realty and Hotel Company was the agent of the Allen Estate Association within the meaning of the Mechanic's Lien Law as to the extras and additions to the alterations and repairs specified by the

lease and shown in the original plans and specifications.
There is not a word of evidence in the record to sustain
such holding, and on the findings of fact of the referee
the court should have ruled that as to these extras and
additions the Ottawa Realty Company was not the agent
of the Allen Estate Association within the meaning of
the Mechanic's Lien Law. Ward v. Nolde, 259 Mo. 285;
Marty v. Amusement Co., 173 Mo. App. 707; Carroll
Contr. Co. v. Newsom, 210 S. W. 114; Powell v. Reibinger,
234 S. W. 850.   (3)   The items of labor and material
required by the lease and the items of labor and material
entering into the extra and additional work are so co-
mingled that they cannot be segregated; therefore even
though it be assumed that, as to the alterations and
repairs required by the lease, the Ottawa Realty Com-
pany.was the agent of the Allen Estate Association with-
in the meaning of the Mechanic's Lien Law, yet since such
lienable items are so co-mingled with non-lienable items
that they cannot be segregated, the whole liens of all the
respondents must fall.  Boiler Works Co. v. Haydock, 59
Mo. App. 660; Edgar v. Salisbury, 17 Mo. 271; Murphy
v. Murphy, 222 Mo. App. 18; Dugan Cut Stone Co. v.
Gray, 43 Mo. App. 671; Badger Lumber Co. v. Knights
of Pythias, 157 Mo. 366; Kirschner v. Kitzpatrick, 3 Mo.
App. 575; Nelson v. Withrow, 14 Mo. App. 270; Gauss
v. Hussmann, 22 Mo. App. 115; Mackler v. Railroad, 62
Mo. App. 677; O'Connor v. Current River Railroad, 111
Mo. 193.   (4)   By their agreement to accept notes of
the Ottawa Realty Company, secured and guaranteed
by the Chicago Bonding & Surety Company, in payment,
the general contractor and those sub-contractors who
agreed to accept notes waived their lien even though it
be assumed that they otherwise had liens.  Garman v.
Sawyer, 22 Mo. 137; Weaver v. DeNutt, 40 N. J. 283;
Barrows v. Baughman, 9 Mich. 213; Phillips on Me-
chanic's Liens, sec. 279; Grant v. Strong, 18 Wall. 623;
McMurray v Brown, 91 U. S. 257; Baumhoff v. Ry. Co.,
171 Mo. 120.   (5)   Fred Boeke & Son are estopped from

claiming or establishing a mechanic's lien against appellant's reversionary interest in this property by reason of the bond which they executed as principal with the New England Casualty Company as surety to the appellant by which they agreed to protect the appellant's property from liens. Handley v. Ward, 70 Mo. App. 146; Fullerton Co. v. Gates, 89 Mo. App. 201; Compton v. Conrad, 203 Mo. App. 217. (6) Even if it be assumed that appellant's reversionary interest could, under the circumstances, be bound by the lien for the alterations and repairs required by the lease, Fred Boeke & Son, in releasing the Chicago Bonding & Surety Company for liability under its bond and on the notes, destroyed their right to a lien at least to the extent of the aggregate of the notes issued to them and the sub-contractors. Secs. 3, 4, 23, 98, 244, 246, 247, 248, 250, 251, Stearns on Suretyship (2 Ed.); 32 Cyc. 22; Taylor v. Jeter, 23 Mo. 244; Wayman v. Jones, 58 Mo. App. 213; Rogers v. Gosnell, 58 Mo. 589; Amonette v. Montague, 75 Mo. 43. (7) By their fraudulent mutilation and falsification of their contracts, Joseph Hirschstein, and A. R. Schulz Wall Paper & Painting Company, destroyed their right to a lien if they otherwise had one, notwithstanding the fact that they sue on *quantum meruit*. Whitmer v. Frey, 10 Mo. 348; McCormick Harvesting Machine Co. v. Blair, 146 Mo. App. 381; Carson v. Woods, 173 S. W. 623; Champion v. Haskell, 30 Mo. 136. (8) Since they failed to give credit in their mechanic's lien statements for the amount of the notes which they agreed to accept in payment and which they received in payment, Fred Boeke & Son, Joseph Hirschstein, A. R. Schultz Wall Paper & Painting Company, Eclipse Electrical Company, and Mueth Plastering Company, have not filed a just and true account, and for that reason, even though it be assumed that they otherwise had liens, their liens must be denied. Baumhoff v. Ry. Co., 171 Mo. 120; Uthoff v. Gerhard, 42 Mo. App. 256; Daugherty Lumber Co. v. Rauthbone, 152 Mo. 215.

*A. E. L. Gardner, John T. Barker, Holland, Rutledge & Lashly, Seneca C. Taylor, Eugene Buder, A. W. Wenger, Rassieur, Kammerer & Rassieur, William S. Campbell, Christy M. Farrar, James E. King, John Brennan, Jr.,* and *H. A. Loevy* for respondents.

(1) The Mechanic's Lien Law is highly remedial in its nature and should be liberally construed in favor of the lien. Weis Marble Co. v. Rossi, 198 S. W. 424; Crane Co. v. Hotel Co., 121 Mo. App. 225; DeWitt v. Smith, 63 Mo. 263; Dugan .v. Gray, 114 Mo. 497; Sash & Door Wks. v. Slade, 137 Mo. App. 23. (2) Whenever the landlord binds or obligates the tenant to build and construct permanent improvements beneficial to the reversionary interest. of the landlord, the person furnishing any part of the materials or work for said improvement under or by virtue of a contract with the said tenant has a right to a mechanic's lien against the reversionary interest of the landlord. R. S. 1909, secs. 8212, 8214, 8216, 8234; R. S. 1919, secs. 7216, 7218, 7220, 7238; Ward v. Nolde, 259 Mo. 285; Winslow Bros. Co. v. McCully Stone Co., 169 Mo. 236; O'Leary v. Roe, 45 Mo. App. 567; Lumber Co. .v. Nelson & Haydel, 71 Mo. App. 118; Dougherty Co. v. Churchill, 114. Mo. App. 578; Hardware Co. v. Churchill, 126 Mo. App. 462; Westport Lumber Co. v. Harris, 131 Mo. App. 101; Carey & Lumber Co. v. Jones, 187 Ill. 203; Crandall v. Sorg, 198 Ill. 62; Mistrell v. Baldwin, 129 N. Y. Supp. 670; National Wall Paper Co. v. Sire, 163 N. Y. 122; Hall v. Parker, 94 Pa. St. 109; Smith v. Norris, 120 Mass. 58; Berket v. Harper, 79 N. Y. 273. (3) The lien is given by law and cannot be considered waived unless the intention to waive is clearly manifested. Peck v. Bidwell, 10 Mo. App. 524; Lee v. Hassett, 39 Mo. App. 71; Lumber Co. v. Hoose, 67 Mo. App. 274; Nice v. Walker, 153 Pa. St. 123; Evans v. Crogan, 153 Pa. St. 121; Baumhoff v. Ry. Co., 171 Mo. 120. (4) The improvements in question were of a substantial benefit to the estate of the lessor.

Weis Marble Co. v. Rossi, 198 S. W. 424; Curtin-Clark Hardware Co. v. Churchill, 126 Mo. App. 469. (5) Neither the taking of notes of the debtor nor that of a third person is payment on account unless such notes are taken with the distinct understanding that they are to be taken in payment, and notes received by the lienor should be surrendered into court at or before the time of trial, and the lien is not waived by the lienor in receiving such notes.• Lumber Co. v. Christophel, 59 Mo. App. 85; Peck v. Bidwell, 10 Mo. App. 524; Lumber Co. v. Christophel, 62 Mo App. 100; Western Brass Mfg. Co. v. Boyce, 74 Mo. App. 100; Western Brass Mfg. Co. v. Boyce, 74 Mo. App. 343; Selby v. McCullough, 26 Mo. App. 66; Ashdown v. Wood, 31 Mo. 465; McMurray v. Taylor, 30 Mo. 263; Bank v. Peterman, 21 Mo. App. 512. (6) Fred Boeke & Son are not estopped from claiming and establishing a mechanic's lien against the appellant's reversionary interest in the property in question by reason of the bond which they executed, as principal, with the New England Casualty Company as surety, to the lessee and the appellant as obligees. Ward v. Nolde, 259 Mo. 304; Hartman v. Berry, 56 Mo. 487; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201; Badger Lumber Co. v. Muehlebach, 109 Mo. App. 646. (7) The testimony of witnesses as to the conversation of William Russell Allen was competent in proof of all lien claims to which their testimony referred, except for the purpose of proving their own claim. Clark v. Thias, 173 Mo. 628; Stanton v. Ryan, 41 Mo. 510; Leahy v. Simpson's Adm., 60 Mo. App. 83; Baer v. Pfaff, 44 Mo. App. 35; Wagner v, Binder, 187 S. W. 1128; Rauch v. Metz, 212 S. W. 357; Prindle v. Fidelity Co., 233 S. W. 255; Gammon v. McDowell, 235 S. W. 461; Darby v. Life Ins. Co., 239 S. W. 68; Biggerstaff v. Riley, 192 Mo. App. 92; Gunn v. Thurston, 130 Mo. 339; Signaigo v. Signaigo, 205 S. W. 23.

WALKER, J.—This is a suit brought in the Circuit Court of the City of St. Louis by the appellant, the Allen Estate Association, a corporation, under the

provisions of Sections 7240, 7244, Revised Statutes 1919, praying for an adjudication of certain mechanic's lien suits which had been brought in said circuit court by seventeen of the respondents to enforce liens against the Southern Hotel property in said city owned by the appellant. Others alleged to have interests in the matter at issue were made defendants as follows: Title Guaranty Trust Company, American Trust Company, Ottawa Realty Company, Ottawa Realty & Hotel Company and New Southern Hotel Company.

The lien claimants each filed cross-bills setting forth their respective claims. Under a stipulation filed by the parties, Marion Early, Esq., was appointed a referee to try all of the issues involved and make a report of his findings. After hearing the testimony he recommended a finding for the respondents, sustaining their liens, which was approved by the court and a judgment rendered accordingly. Appellant thereupon prefected an appeal to this court.

The Allen Estate Association is the owner of the fee in a block of ground, except a small lot at one corner, in the city of St. Louis, bounded by Broadway, Walnut, Fourth and Elm Streets. Located thereon is a six-story building, long known as the Southern Hotel, but unoccupied at the time of these proceedings. May 15, 1913 the Allen Estate Association leased this property to the Ottawa Realty Company for a term of 99 years from April 1, 1913. Under this lease it was agreed: "To alter, remodel and reconstruct said hotel building, so as to make it suitable for hotel and commercial purposes. . . . The alterations, remodeling and reconstruction to cost not less than seventy-five thousand dollars."

One of the conditions of the lease was that a bond be given to the lessor by the contractor performing the work for the proper performance of same and for protection against liens. This provision is to the general effect that the lessor and its interests in the property shall not be liable for the cost of these improvements. In October, 1913, the Ottawa Realty Company made a contract with Fred Boeke & Son for the contemplated

improvements. Article IX of this contract provided for monthly payments of eighty-five per cent of the amount certified by the architect, in effect as follows:

The owner, the Ottawa Realty Company, agrees to pay the contractor, Fred Boeke & Son, such amount by giving its construction notes payable on or before six months after date, bearing interest at the rate of six per cent per annum. A bond having been given by the owner, i. e., the Ottawa Realty Company, to the contractor, executed by the Chicago Bonding & Surety Company, guaranteeing the payment of said notes. It is understood that all interest on said note or notes is to be paid by the contractor, and not by the owner.

The bond in the sum of $75,000 for the performance of the contract and as protection against liens and other claims bears date of October 28, 1913. Fred Boeke & Son are principals therein and the New England Casualty Company is the surety; the obligation runs to both the Ottawa Realty Company and the lessor, the Allen Estate Association, thus complying with the requirements of the lease.

The bond of the Ottawa Realty Company as principal with the Chicago Bonding & Surety Company as surety, dated October 23, 1913, runs to Fred Boeke & Son, and is conditioned for the payment of the construction notes mentioned in the building contract.

Fred Boeke & Son made a number of sub-contracts. Important changes were made in the work from time to time materially increasing the cost of same. One change or addition was put in the shape of a written contract between the Ottawa Realty Company and Fred Boeke & Son, dated February 26, 1914. It provides for payments as in the prior contract, except that half was to be in cash, and half in construction notes. As the work progressed, payments were made to Fred Boeke & Son and to several of the sub-contractors in the construction notes above mentioned.

The Ottawa Realty Company assigned its lease to the New Southern Hotel Company, but that lease was canceled December 3, 1913.

The Ottawa Realty Company increased its capital stock from three thousand dollars to three hundred thousand dollars. It changed its name from the Ottawa Realty Company to the Ottawa Realty & Hotel Company intending to operate the hotel itself. But its efforts to raise the money by selling the stock and bonds failed.

In May, 1914, it became obvious that the corporation could not carry out its contract, not only as to the building, but under the lease generally. Some of the contractors attempted to reorganize the Ottawa Realty Company. As a step in that direction Beattie, the architect, Fred Boeke and a sub-contractor were elected as officers of the reorganized company and a qualifying share was turned over to each of them. The Allen Estate Association, on June 10, 1914, served notice of forfeiture of the lease on the president of the Ottawa Realty Company, and on the expiration of the sixty days specified in the notice, August 10, 1914, took possession of the property.

The attempts to reorganize the enterprise having failed, these liens were filed. Construction notes above mentioned in the aggregate of $22,632.76 were in the hands of a bank which obtained judgment against the Chicago Bonding & Surety Company. These notes had been issued originally to Fred Boeke & Son. Other construction notes were in the hands of the contractors to whom they had been issued. In February, 1916, the Chicago Bonding & Surety Company, for a consideration, obtained a release from Fred Boeke & Son as to its liability on the notes held by it, and gave credit therefor on his lien and on the bond. The subcontractors who took such notes have surrendered them into court and deny that they have received any consideration therefor, and have disclaimed all rights thereunder.

In addition to Fred Boeke & Son and the sub-contractors, four other defendants claim liens under original independent contracts with the Ottawa Realty Company.

First, as to the claim of Fred Boeke & Son. This firm was the chief contractor. It began a mechanic's lien suit April 3, 1915, action on which was suspended by the filing of this suit. Boeke & Son's answer to this suit was a general denial and a cross-bill, in which judgment is asked on the lien claimed. The Allen Estate Association filed an answer to this cross-bill, setting up various defenses, to which a reply was filed.

I. It is contended that the lessee, the Ottawa Realty Company, was not the agent of the Allen Estate Association, and that the firm of Boeke & Son had no contract with the latter and consequently were entitled to no lien. A technical reliance in support of this contention is based upon the statute which provides: "Every mechanic or other person who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler, or machinery for any building, erection, or improvement upon land, or for repairing the same under and by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor . . . shall have . . . a lien." [Sec. 7216, R. S. 1919.]

Right to Lien.

Under this statute appellant claims that before the right to a mechanic's lien can exist in behalf of Boeke & Son, and the other respondents as well, so far as the matters at issue are common to all, it must be shown that they had contracts with the Allen Estate Association, the owner of the fee. It is further contended that Section 9 of the lease from the Allen Estate Association to the Ottawa Realty Company bars mechanic's liens against the Allen Estate Association. Section 9 is as follows:

"It is further covenanted and agreed between the parties hereto that no provision in this lease, whether those requiring and permitting the lessee to make repairs, alterations or improvements or to erect new buildings upon said premises or any other provision, shall be construed to constitute the lessee the agent of or authorized to act on behalf of the lessor in any respect for the doing of anything whatever. And all per-

sons doing work or furnishing material to or for any such building or improvement constructed or caused to be constructed upon the described premises by the lessee shall look only to the lessee and its interest and shall not be entitled to look to the lessor or its interest in said premises, either for payment or for the enforcement of any liens against the lessor's interests in said premises.''

The effect of this contention if sustained would be to so construe the agreement between the Allen Estate Association and the Ottawa Realty Company as to cut off whatever rights a contractor may have under the facts of the case to a mechanic's lien against the lessor's interest in the property.

Whether therefore the appellant seeks through a reliance upon the words of the statute, or such a construction of the lease between the Ottawa Realty Company and the Allen Estate Association as will render the latter immune from the imposition of mechanic's liens upon its property by the respondents, must in the interest of right and justice, free from technical quibbles and finely drawn definitions of terms, depend upon a wholesome interpretation of the facts disclosed by the record.  It may be conceded that such a connection as is contemplated by the statute (Sec. 7216) must be shown to exist between the lessor and the lessee to create the lien involved.  While the lease should, if such connection exists, sufficiently disclose the lessor's finger prints on same, it is not upon this instrument alone, however, but to all the facts connected with the transaction that we may look in determining whether a connection in the nature of an agency exists between the parties and as a consequence the right of the respondents to the liens.

First, however, as to the lease.  Section 4 of same reads as follows:  ''As further consideration to the lessor for the execution of this agreement the lessee agrees that it will immediately on coming into possession of that part of the leased premises formerly oc-

cupied as a hotel building, begin to alter, remodel and reconstruct said hotel building, so as to make it suitable for hotel and commercial purposes, and agrees to complete same before October 1, 1913. The alterations and remodeling and reconstruction shall cost not less than seventy-five thousand dollars."

This section is followed by a rather full description of the contemplated alterations and a provision for a bond from the contractor protecting the lessor, among other things, against mechanic's liens.

Under Section 5, the lessee is given the right to remove the present building and erect a new building to cost not less than five hundred thousand dollars, the lessee, however, before beginning the demolition of the building is to execute and deliver to the lessor a satisfactory bond in the sum of one hundred and fifty thousand dollars.

Under Section 7, the lessee may alter, add to or remodel the building, provided it first gives the lessor a satisfactory bond, conditioned that such change be paid for, and that it would not substantially impair the value of the building. In addition the lease had the customary forfeiture clause; and it provides that all improvements shall go to the lessor.

The letter of the Allen Estate Association, indicative of readiness to accept the lease dated, March 28, 1913, states that:

"The execution of the lease is conditioned upon the submission by you of plans and specifications showing the changes and alterations to be made by you in accordance with the terms of the lease, the execution of the bond as provided in the lease, and the approval of such plans, specifications and bond."

Section 4 is to be construed in the light thrown thereon by other portions of the lease; that it was so construed we find from other facts which disclose that the lessor, so far as the work covered by said section is concerned, claimed and exercised the right during the

performance of the same to keep in touch with its progress and thus possess itself of a knowledge of the manner in which it was being done and upon its completion to have it examined by experts.

As stated, the lessor, the Allen Estate Association, on the 10th day of August, 1914, forfeited the lease and took possession of the property. All of the work for which the liens herein are claimed had been completed prior to the forfeiture.

In addition to the foregoing record facts others in evidence showing the relations of the parties and their circumstances and conditions in connection with the property and with each other cannot but lend aid in determining whether the lessor by binding the lessee to make improvements of substantial benefit to the leased premises, constituted the lessee its agent within the meaning of the Mechanic's Lien Law and thereby subjected the property to the liens claimed. Let us give heed therefore to these facts. The property which had involved the investment of a large amount of money and for years was a famed hostelry ceased to be valuable for that purpose; or in the cold language of commerce it no longer—probably on account of its location—attracted the traveling public and it became a burden instead of a source of profit. For months it had been unoccupied. At this juncture certain persons of fertile fancy, but of meager means in a pecuniary sense, imbued with the idea which in all times has persisted in some minds that out of a shoe string may be evolved a tan yard, conceived the plan of incorporating the Ottawa Realty Company. The purpose of this creation of a corporate entity whose assets appear to have consisted in its name, was to secure a lease on the Southern Hotel property and by changes which would adapt it to the present demands of the traveling public make it a paying enterprise. While there is no direct evidence on the subject, the alert and seasoned intelligence of those who constituted the Allen Estate Association justifies the conclusion that

they could not have been unaware of the financial condition of the company. But the property had, as we have said, long been unoccupied. This lease presented, though but remotely as it now appears, the prospect that a profit might again be reaped from the property; and true to human nature "against hope they believed in hope" (Rom. IV, 18), and let the property to the Ottawa Company, well assured by the terms of the lease and the opportunities afforded for frequent inspection that if the property was not rendered profitable it would at least be materially improved. This latter, it may be pertinently remarked, is expressly termed a further consideration to the lessor for making the lease. Whether viewed therefore from within the four corners of the lease or with all of the other attendant facts the lessor could not well be worsted by the letting of the property. If the lessee performed its contract the lessor could not be otherwise than satisfied; if it failed the property would revert to the lessor improved in many material respects and certainly more likely to prove of value than when leased.

It is said in a well considered case, in discussing the Mechanic's Lien Statute (Sec. 7238) defining an owner of property, that: "It has been uniformly held that whenever the landlord binds or obligates the tenant to build or construct permanent and substantial improvements beneficial to the reversionary interest of the landlord, the person furnishing any part of the material or work for said specific improvements under or by virtue of a contract with said tenant has a right to a mechanic's lien against the reversionary interest of the landlord." [Ward v. Nolde, 259 Mo. l. c. 299.]

The evidence shows that more than one hundred thousand dollars was put into this property by respondents, for which these liens are sought to be enforced. The reversionary interest of the lessor was therefore enhanced if not to this extent at least in such a substantial manner as to entitle respondents to these

liens.    These improvements having been made under
the supervision of the lessor with the view of improv-
ing the property, and that result, as the facts show, hav-
ing been accomplished, it is immaterial as a matter of
fact whether the owner was ultimately benefited by the
transaction.    Under this view of the case the reversion-
ary interest of the lessor having been shown, it is un-
necessary to discuss the contention as to the effect of
these improvements on the property at the end of the
lease; or whether or not despite the improvements the
lessor is now receiving a return from the property.

   While it is true that a tenant, as such, is not the
agent of the owner to the extent that he may establish a
lien against the land of the owner for improvements
made by the tenant for his own benefit and at his own
cost, nevertheless, if it appears that the owner has ob-
ligated the tenant to construct permanent and substan-
tial improvements on the property beneficial to the re-
versionary interest of the owner, those furnishing labor
or material for such improvements by virtue of contracts
with the tenant have a right to mechanic's liens against
the reversionary interest of the owner in the property
improved. This general statement of the rule based up-
on facts parallel in all of their material features to those
at bar, has been given express approval in Ward v.
Nolde, supra, and in other cases in this court and the
courts of appeals. [Winslow Bros. Co. v. McCully Stone
Mason Co., 169 Mo. 236; Weis & Jennett Marble Co. v.
Gardiner, 198 Mo. App. 35 and cases, p. 39.] In the Win-
slow Case the limitations here sought to be applied to the
statute (now Sec. 7216, R. S. 1919) are discussed and it
is held that while a contractual relation, direct or indi-
rect, with the owner of the land must be shown, it is not
necessary to authorize the lien that the latter contract
in person, but that he may bind his land just as effectu-
ally when acting through an agent.    What constitutes
such an agency has been clearly defined in Ward v. Nolde,
on all-fours, so far as one case can be with another, with
the instant case.

II.　The appellant claims that Fred Boeke & Son are estopped from enforcing a mechanic's lien against this property because they gave a bond with the New England Casualty Company, as surety, to the appellant and the Ottawa Realty Company, which among other conditions was to protect them against mechanic's liens. That the work was done and the mate-rials furnished there is no question. The contention therefore must be interpreted as disclosing this attitude on the part of the appellant: "that you performed your contract I admit, but you are estopped from claiming compensation for your services, because you have contracted not to enforce the payment of your claim by filing a mechanic's lien on the property you have improved.". No such interpretation can within reason be given to this obligation. To say that one capable of contracting would enter into an agreement requiring skill, labor and the immediate expenditure of much money, and in this agreement free from obligation the owner of the property to be benefited, is absurd. What this bond means when it provides that the contractor will hold the owner harmless from mechanic's liens, is that if the obligees, the Ottawa Realty Company and the Allen Estate Association, pay the obligors, Fred Boeke & Son, the contract price for work done and materials furnished, the bond will protect them from any liens that may be filed by material-men and sub-contractors. A like bond was so construed in Ward v. Nolde, supra, and had been given the same construction in earlier cases. [Hartman v. Berry, 56 Mo. 487; Lumber Co. v. Muehlebach, 109 Mo. App. 646; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201.] This contention ignores the fact that in a transaction of this character the primary obligation is the debt due for the work done and materials used in the performance of same. Until this is discharged there is no ground of complaint on the part of the owner, if the facts in other respects authorize the filing of the lien. In this view of the law the owner is immune from injury in that he

Estoppel.

can only be made to respond to a just obligation. If when notified of the lien he is indebted to the contractor in an amount equal to that of the lien account he may, with the amount in his hands pay off the lien account and thus free his property. If he has paid the contractor in full he may resort to the indemnity furnished by the bond. He may, as was said in the Lumber Company Case, supra, plead the provisions of the bond and set up as a counterclaim the amount of the lien sought to be enforced against his property. The filing of the lien therefore of itself carries with it no presumption that the owner of the land is hurt and that he may resort to the indemnity.

III. It is contended that Fred Boeke & Son and the other respondents by their agreement to accept the notes of the Ottawa Realty Company waived their rights to mechanic's liens.

It appears that it was first agreed by Fred Boeke & Son to accept construction notes in payment for their services. The work under the contract had been in progress but a short time when the Ottawa Realty Company Waiver. insisted upon many material alterations from the original agreement which greatly increased the cost of the work. Certain sub-contractors thereupon refused to proceed with the work and to receive construction notes in absolute payment of their claims. It was then agreed between Fred Boeke & Son and the Ottawa Realty Company that notes issued directly to the former should be regarded as absolute payments on the account whether actually paid or not; but that notes issued to the various sub-contractors should not be considered as payments on the indebtednesses to Fred Boeke & Son, unless they were actually paid. Thereafter the notes were made out directly to the sub-contractors and they were given to them with the understanding that they would be credited only when paid. Fred Boeke & Son gave credit for all notes made payable to them upon

300 Mo.—38

receipt of them; and it appears that the lienors have given credit in their mechanic's liens for all notes received by them. The foregoing will sufficiently explain conditions under which the construction notes were issued. Since nothing has been paid on these notes issued to the sub-contractors the claim of Fred Boeke & Son cannot be affected by the subsequent history or disposition of these notes. That firm under the ruling of the trial court and the finding of the referee which we approve had no control of them and could owe no duty to the Allen Estate Association in connection with them. The reasoning of this court in Baumhoff v. Railroad, 171 Mo. 120, is peculiarly pertinent and to my mind conclusive in this behalf. After a review of various cases in which a waiver of a mechanic's lien is discussed, the court finds in effect that a lien is not waived by an agreement to accept other things than money in payment for the work done or material furnished unless that agreement is performed in making payment in the terms of the contract.

No rights of third persons intervened in this case and the ruling of the United States Supreme Court in McMurray v. Brown, 91 U. S. 1. c. 266, has appropriate application. The court there says: "If the labor has been performed or the materials furnished, no matter in what the owner agreed to pay, if he has not paid in any way, the laborer or mechanic has the right to resort to the security provided by law, unless the rights of third persons intervene before he gives the required notice."

In Reynolds v. Manhattan Trust Co., 83 Fed. 1. c. 601, the fact that the contractor had performed the labor and received no compensation therefor renders that case parallel to the one at bar. In the Reynolds Case the court held: "If the promise of the improvement company had been performed, if the bonds and certificates for the stock had been delivered, the lien would undoubtedly have been discharged. But the proposition is now too well settled to admit of discussion that an agreement to

pay the debt secured by a mechanic's lien by the note of
the promisor, or by the bond, note, mortgage, or other
obligation of a third person will effect no waiver of the
lien when that agreement has never been performed.
If the contractor has bestowed his labor and material
upon the improvement until he has completely performed
his agreement, the lien exists; and, if the owner has not
paid for the work or material in any way, it is immaterial
in what way he promised to pay, and the laborer or ma-
terialman may avail himself of the security which the
statute creates.''

IV.  We have noted that the Ottawa Realty Com-
pany, as principal, with the Chicago Bonding & Surety
Company as surety, gave bond to Fred Boeke & Son con-
ditioned that from time to time the Ottawa Realty Com-
pany would deliver to Boeke & Son and to the sub-contrac-
tors certain notes of the Ottawa Realty Com-

Subrogation.  pany, indorsed by the Chicago Bonding &
Surety Company.  The facts disclose that construction
notes were issued by the Ottawa Realty Company, with
the Chicago Bonding & Surety Company as surety, to
Fred Boeke & Son, to the amount of $28,632.76, of which
sum $22,632.76 was held by a bank which has obtained
judgment thereon against said Surety Company.  On
February 3, 1916, Fred Boeke & Son executed a written
instrument reciting the foregoing.  The sub-contractors
held similar notes to the aggregate amount of $54,271,
in which Fred Boeke & Son never claimed, and do not
now claim any right, title or interest.  Under these cir-
cumstances Boeke & Son released and discharged the
bonding company from any and all claims they ever had,
now have, or may hereafter have against it, excepting as
to the $22,632.76 held by the bank aforesaid, and agreed
to turn over and surrender the remaining $6000 note
held by them.  Appellant urges that if Fred Boeke &
Son had a lien against the Allen Estate Association's in-
terest in the property, the latter is subrogated to the
rights of that firm on the bond, just mentioned, and that

the release quoted, if it does not destroy the lien, at least warrants a credit to the extent of the surety surrendered. However, the only right of Fred Boeke & Son against the Surety Company at the time of the release, so far as the record discloses, was on the $6000 note. As Fred Boeke & Son, in filing their lien, had credited all of the construction notes directly received by them, including the six thousand dollars in question, on their claim, the Allen Estate Association had no interest in the security for that note, and has lost nothing as far as the claim of Fred Boeke & Son against it is concerned by the release of the Surety Company.

Summarizing the foregoing statement of this phase of the case we find that Fred Boeke & Son have accounted for all of the guaranteed notes and have given proper credits for same in their lien claim; and that they are not making and have not made any claim for a lien on account of said notes; and that as to the notes delivered to sub-contractors, Fred Boeke & Son have never had any right or claim to same nor have they ever asserted such right or claim. This firm therefore owes no duty and is answerable to no claim of the Allen Estate Association in regard to said notes. Appellant's contention therefore in this behalf is without merit.

V. It is charged that two of the respondents, Hirschstein and the Schulz Wall Paper Company, mutilated their respective contracts by the unauthorized insertion therein of words to the following effect: "Notes to be credited when paid and the last note to become due within three months after the work is completed." These insertions, it is contended, destroy the lien of these respondents, and that Fred Boeke & Son having been parties to same have likewise lost their right to a lien.

Spoliation of Contract.

It is enough to say, in so far as this charge affects Fred Boeke & Son, that their claim to a lien is in no wise dependent upon the contract of Hirschstein and the

Schulz Company and they can in no way affect the right of Fred Boeke & Son to a lien.

There was testimony *pro* and *con* upon the subject of these insertions. None of the witnesses, however, who testified in support of the appellant's charge, stated that the words quoted were not in the original contracts at the time the same were signed. There was affirmative testimony that they were inserted before either of the contracts was executed. In addition to the testimony in that behalf of the respondents themselves may be added that of Mr. Beattie, the architect, Thomas H. Sprinkle, a reputable attorney of the city of St. Louis and Mr. Fred Boeke, of the firm of Boeke & Son. The referee did not find sufficient merit in the charge to sustain it. The able and dispassionate judge of the trial court, Hon. Hugo Grimm, after a careful review of this testimony, likewise refused to sustain this charge. While it is true that fraud may be inferred from facts and circumstances, as it is sought to be done in the contention of the appellant, it is never to be presumed; and where, as here, a transaction may as well consist with honest and fair dealing as with a fraudulent purpose it is and should be referred to the better motive. [Jones v. Nichols, 280 Mo. 653; Walsh v. Walsh, 226 S. W. 236.] In view therefore of all of the facts which the record discloses in regard to this charge we find against the appellant's contention.

VI. Appellant contends that error was committed in permitting certain witnesses, Hirschstein, Nocenti and Meyer, to testify in the case. The objection to Nocenti and Hirschstein is that they are parties in interest in a contract to which the other party is dead; a **Competent Witnesses.** similar objection is made to Meyer's testimony, which was in regard to a conversation between the architect, Beattie, and William Russell Allen, then president of the Allen Estate Association, who died prior to the time of the trial. Meyer was the inspector of the architect, and the latter was the general

superintendent of the lessee, the Ottawa Realty Company. The other witnesses, Hirschstein and Nocenti, were sub-contractors and lien claimants. Meyer's testimony in regard to the conversation he heard between Allen and the architect was competent for two reasons: First, because the witness was not an interested person within the meaning of the statute; and, second, because he was not a party to the alleged conversation with Allen.

While the witness Nocenti was not competent to testify in support of his own claim, he was competent as a witness in the suits of other lienors and his testimony was thus limited. The same is true in regard to the testimony of the other lien claimant, Hirschstein.

The conclusion reached in regard to the admissibility of this testimony is supported by the statute (Sec. 5410, R. S. 1919) which provides:

"No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility; *Provided,* that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in the favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor."

At common law, all interested persons were disqualified as witnesses, whether they were parties to the contract or not. It is evident from its language that it was not the purpose of this section to disqualify any one who was a competent witness at common law. On the contrary, as we said in the well chosen words of Brown, C., in Signaigo v. Signaigo, 205 S. W. 23:

"This is a qualifying and not a disqualifying statute. It is remedial and not restrictive in its nature. Its evident purpose is to give courts and juries, as well as parties, the right to have testimony which had been withheld from their consideration by the rules of the common law, and not to withhold such evidential aid as had theretofore been available. The prohibitory provisions depended upon as disqualifying provisions in this case are inserted by way of proviso, the primary purpose of which is to except the clause covered by it from the general provisions of the same statute. [Deitch v. Staub, 115 Fed. 309, 53 C. C. A. 137; George R. & Bank Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377; Brown v. Patterson, 244 Mo. 639, 134 S. W. 1; Wagner v. Binder, 187 S. W. 1128; Supply Co. v. Smith, 182 Mo. App. 212, 167 S. W. 649.]"

In different language, but to the same effect, citing the Signaigo Case with approval, we said in Rauch v. Metz, 212 S. W. 357, in construing this statute that it "is purely remedial in its nature, its object being to remove a disability which theretofore existed at common law, and that the proviso creates no disability, but only limits the operation of the ' enabling provision. [Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885, 85 Am. St. 480, and cases cited; Wagner v. Binder, 187 S. W. l. c. 1153, and cases cited; Signaigo v. Signaigo, 205 S. W. l. c. 29, and cases cited.] It is a qualifying and not a disqualifying statute. By its general terms it removes all disqualification by reason of interest in the event of the suit as a party or otherwise, so that we must look for the disqualification of this witness in the terms of the proviso alone, which applies only to cases in which one of the original parties to the contract or cause of action in issue and on trial is dead or insane. It is not her interest as a party to the suit which disqualifies her. That disqualification is removed. It is her interest as the only surviving party to the cause of action."

As to what constitutes such an interest as will disqualify under the statute where the other party to the

contract is dead has been frequently ruled upon. Perhaps the leading case on this particular provision of the statute is that of Clark v. Thias, 173 Mo. 628, in which it was held, after an elaborate review of the rulings on this subject, that the clerk of the payee of a note has no interest in the note or a suit thereon and therefore is not an incompetent witness to testify to the circumstances under which the note was given by the deceased maker in lieu of one which had been destroyed by fire. A later case, that of Wagner v. Binder, 187 S. W. 1128, gives a history of the statute and reviews many of the decisions in relation thereto. That portion of the opinion pertinent here is as follows:

"And why should it not be the law that the agent, Mr. Wagner, in this case, should be a competent witness? He was competent at common law, as previously shown; and clearly there is nothing in the statute that disqualifies him. He was neither an interested party, nor, in the language of the statute, did he 'testify in favor of any party to the action claiming under him.' The mere fact that he was acting as the agent of the respondent should no more disqualify him under the statute than if he had not been so acting, but had been present and saw the things done and heard the conversations about which he testified. It is not the policy of the law or of good morals that, because a party to a contract or a cause of action is dead, his estate should be excused from the performance of the former or relieved from the liability as to the latter; nor is it the policy of the law to destroy competent testimony showing his liability thereon. The law is to the contrary, and said enabling statute was enacted for the purpose of preserving rights and not to destroy them. The statute is satisfied when death silences the mouth of one of the parties and the courts close the lips of the other, without going further and destroying competent testimony showing the liability of the deceased party."

In Prindle v. Fidelity & Casualty Co., 233 S. W. 255, the question is discussed as to whether the soliciting agent

of an insurance company was rendered an incompetent witness because of the fact that the insured was dead. It was held that the party to the suit was the insurance company itself, and that the said agent had no interest in the subject-matter and was not disqualified from testifying as to conversations had by him with the insured, even though he was a party to the contract to the extent that he was instrumental in making it.

To a like effect is Darby v. Ins. Co., 239 S. W. 68, in which it was held that the soliciting agent of an insurance company was competent to testify to the transactions between himself and the deceased policy holder, where the soliciting agent himself had no interest in the matter. The court in this regard said: "A question almost identical with that before us has recently been passed upon by the St. Louis Court of Appeals in Prindle v. Casualty Co., 233 S. W. 252. There it was urged that the death of one Mrs. Henshaw, the insured, did not render the Casualty Company's soliciting agent, Manker, incompetent to testify to conversations or transactions between himself and the deceased. The court held such insistence to be correct, saying, 'Mr. Manker, as appellant's agent, not being a real party in interest, was not disqualified from testifying to conversations with Mrs. Arla A. Henshaw by reason of her death.' "

It is clear under these rulings that Meyer, who was merely an inspector under the architect, was competent under the statute to testify to a conversation he happened to hear between the latter and Allen.

While it is true that the respondents have been joined by the appellant in opposing the establishment of their liens, their claims nevertheless are separate and distinct and but for the Mechanic's Lien Statute each suit would have been separately tried as they were brought. The mere fact that the Legislature in an evident effort to simplify and lessen litigation passed a law by which these claims could be consolidated in equity and determined in one proceeding, does not have the

effect of making them joint claims. Despite the consolidation, the claim of each lienor remains separate and distinct from those of all others. To illustrate: if no equity suit had been brought by the appellant to consolidate these cases and Nocenti and Hirschstein had each prosecuted his claim separately either would have been a competent witness to establish the claim of the other. There is nothing in the Mechanic's Lien Law which lends countenance to the conclusion that it was the purpose of the Legislature in enacting the equity procedure therein (Sec. 7240 et seq.) to disqualify as a witness any person who would have been qualified but for the consolidation of the suits. We therefore rule this contention against the appellant.

VII. We have examined this voluminous record with a view to determining whether the lienable items have not with reasonable discrimination been separated from the non-lienable. We have not encountered the difficulty complained of by the appellant in making this segregation, and we have not found that claims have been allowed which did not come within the purview of the Mechanic's Lien Law. Neither the referee nor the trial court encountered any difficulty in this respect.

Segregation of Items.

VIII. Aside from the exceptions noted in certain cases which we have discussed and determined, the substantial facts in the cases of other claimants are, so far as they affect the right of these claimants to liens, the same as in the case of Fred Boeke & Son. The appellant recognizing this fact has deemed it sufficient in stressing the errors claimed to have been committed, to nominally confine its assignments to the latter case. In our review we have not thus limited them, but have construed the appellant's adverse attitude to apply to all of the cases. In our discussion and determination of the issues, therefore, our

All Claims Considered.

rulings are to be so construed as to matters common to all of the claims.

In view of all of which, the judgment of the trial court is affirmed. All concur.