

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | |
|---|---|
| CRAFTON CONTRACTING COMPANY ) <br> and VOGEL SHEET METAL & HEATING,) <br> INC., ) <br> ) <br>     Appellants, ) <br> ) <br> vs. ) <br> ) <br> SWENSON CONSTRUCTION ) <br> COMPANY, INC., ALLEN EDMONDS ) <br> CORPORATION, and PLAZA ) <br> FRONTENAC ACQUISITION, LLC, ) <br> ) <br>     Respondents. ) | No. ED102910 <br><br> Appeal from the Circuit Court of <br> St. Louis County, Missouri <br> 13SL-CC03881 <br><br> Honorable Steven H. Goldman <br><br><br> Filed: April 12, 2016 |

## OPINION

Crafton Contracting Company ("Crafton") and Vogel Sheet Metal and Heating, Inc. ("Vogel") appeal the trial court's judgment denying enforcement of the mechanic's liens they placed on the Plaza Frontenac shopping mall against its owner, Plaza Frontenac Acquisition, LLC ("Plaza Frontenac"). Because we find that the court erroneously declared and applied the law, we reverse and remand.

### Facts and Procedural History

The facts are undisputed. On December 11, 2012, Plaza Frontenac and Allen Edmonds Corporation ("Allen Edmonds") entered into a ten-year lease with Plaza Frontenac for store space at the Plaza Frontenac mall located on Lindbergh Boulevard in St. Louis County for the specific purpose of operating an Allen Edmonds shoe store. The

lease required Allen Edmonds to make certain improvements to the leased premises as more specifically described below.

On December 13, 2012, pursuant to a requirement of the lease, Allen Edmonds submitted the plans for the improvements to Plaza Frontenac. Plaza Frontenac approved the plans. About a month later, Allen Edmonds accepted general contractor Swenson Construction Company, Inc.'s ("Swenson") $207,398.40 bid for the work. Swenson subcontracted demolition, framework, drywall, carpentry, and barricade work to Crafton for $67,023.00, and heating, ventilating, and air conditioning work to Vogel for $15,975.00. Crafton and Vogel completed their portions of the project.

Allen Edmonds paid Swenson in full but Swenson never paid Crafton and Vogel for their work and Swenson went out of business in June 2013. Crafton and Vogel filed mechanic's liens on the mall against Plaza Frontenac and filed suit to enforce those liens.

The parties submitted the case to the court on stipulated facts and exhibits. The trial court entered its judgment in which it found that Crafton and Vogel's liens were unenforceable against Plaza Frontenac because Crafton and Vogel failed to establish that Allen Edmonds was Plaza Frontenac's agent under the mechanic's lien statute. This appeal follows.

## Standard of Review

Both parties contend that this case is governed by the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo.banc 1976), which requires this court to affirm unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. However, this is not the correct standard of review in this case.

2

This case was submitted to the trial court on exhibits and stipulated facts and was not one involving the resolution by the trial court of conflicting testimony.[1] Thus, the only question for our review is whether the trial court made the proper legal conclusions from the stipulated facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo.banc 1979); *Archey v. Carnahan*, 373 S.W.3d 528, 531 (Mo.App.W.D. 2012). Further, because this case was decided below based upon an interpretation of section 429.010,[2] our review is de novo. *Mo. Prosecuting Attorneys v. Barton Cnty.*, 311 S.W.3d 737, 740 (Mo.banc 2010); *Kohrs v. Family Support Div., Mo. Dept. of Soc. Servs.*, 407 S.W.3d 85, 87 (Mo.App.W.D. 2013).

## Discussion

### A. The trial court erred by strictly construing the mechanic's lien statute because under Missouri law the statute is to be construed favorably to uphold the rights of laborers and materialmen.

In its judgment, the court stated that it was constrained to follow section 429.010 strictly. However, under Missouri law, mechanic's liens statutes are to be construed favorably to uphold the rights of laborers and materialmen. *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 598 (Mo.banc 2012). We find that this fundamental misinterpretation of the law led to the trial court's erroneous interpretation of section 429.010.

---

[1] We note that there is some reference in the briefing to matters outside of the stipulated facts and exhibits that were not provided in the record on appeal. We do not find that these matters were necessary to the trial court's determination or to ours and because we have been provided the record necessary for our determination, we do not consider them in our decision. See Rule 81.12(a).

[2] All statutory references are to RSMo 2000 unless otherwise indicated.

3

**B. The trial court erroneously applied the law when it found that Allen Edmonds was not Plaza Frontenac's agent under the mechanic's lien statute.**

Section 429.010 provides that a mechanic's lien may be placed upon the owner's land for "any work or labor" completed upon such land by any person who contracts with the owner or his *agent*. At issue then is whether Allen Edmonds acted as Plaza Frontenac's agent when it contracted with Swenson who in turn hired Crafton and Vogel. If so, then Crafton and Vogel's mechanic's liens are enforceable against Plaza Frontenac.

Generally, there are three essential elements to an agency relationship: 1) the agent holds the power to alter the legal relations between the principal and a third party; 2) the agent is a fiduciary with respect to matters within the scope of the agency; and 3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo.banc 2002). However, the term "agent" as used in section 429.010 is to be interpreted broadly and the level of authority required to create an agency relationship for purposes of a mechanic's lien is less than required in other contexts. *River City Drywall, Inc. v. Raleigh Properties, Inc.*, 341 S.W.3d 716, 721 (Mo.App.E.D. 2011) (citing *Ward v. Nolde*, 168 S.W. 596, 600 (Mo. 1914)). It is not a typical principal-agent relationship, but rather, a special, limited agency arising out of section 429.010. *Mid-West Eng'g & Constr. Co. v. Campagna*, 397 S.W.2d 616, 628 (Mo. 1965)

The determination of whether an agency relationship has been created in the mechanic's lien context often centers on the terms and requirements of the lease. See *Messina Bros. Constr. Co. v. Williford*, 630 S.W.2d 201, 207 (Mo.App.W.D. 1982). When a lease requires the lessee to make improvements of a substantial and permanent nature, the lessee, in making such improvements, becomes, as a matter of law, the agent of the lessor within the meaning of the mechanic's lien law. *Campagna*, 397 S.W.2d at

4

625-26; *Ward*, 168 S.W. at 600; *Williford*, 630 S.W.2d at 206. The crux of the matter is whether the lessee is required by the lease to make the improvements. *Ward*, 168 S.W. at 600. If the lessee is not required to make the improvements and makes them on his own, no agency is established. *Id.* But where the lessee has no option and he is compelled by the lease to make the improvements, agency is established and the mechanic's lien is enforceable on the property against the owner. *Id.*

Turning to the circumstances of this case, we find that Allen Edmonds was Plaza Frontenac's agent because the lease required Allen Edmonds to make substantial and permanent improvements to the property. See *Campagna*, 397 S.W.2d at 625-26. As a result, we hold that under Missouri law, Crafton and Vogel were entitled to place their mechanic's liens on the mall and enforce them against Plaza Frontenac.

Indeed, it is difficult to imagine a lease in which the lessor has more control and requires more of the lessee than the lease between Plaza Frontenac and Allen Edmonds. The following lease provisions illustrate this point:

1. The lease permitted the premises to be used as an Allen Edmonds shoe store and for no other purpose whatsoever. See *Newport v. Hedges*, 358 S.W.2d 441, 444-45 (Mo.App. 1962) (noting that an implied agency is found where the premises are let for a specific use or purpose and such purpose cannot be accomplished except by the making of substantial improvements).

2. The lease required Allen Edmonds to submit plans for the work to Plaza Frontenac for Plaza Frontenac's approval and prohibited Allen Edmonds from starting any work on the project until the plans were approved. See *Ward*, 168 S.W. at 601 (finding agency where improvements tenant was required to make were according to plans and specifications approved by landlord).

5

3. The lease required Allen Edmonds to perform a complete build-out of the leased premises to conform with Allen Edmonds's other stores, including the bump-out of the southern storefront; installation of storefronts and storefront signs; customer entrance doors; floor covering; plastering; interior decorating; wall and ceiling treatment; completion of the air conditioning and fire sprinkler system; extension of electrical service to the leased premises; connection of plumbing lines to the Plaza Frontenac system; the installation of electric lights and fixtures; and all other electrical work.

4. Allen Edmonds's contractor was required to give Plaza Frontenac a security deposit so Plaza Frontenac could complete the work if it was not finished. See *Ward*, 168 S.W. at 601 (noting that bond requirement was relevant fact to consider in determining agency).

5. Plaza Frontenac had the right to approve Allen Edmonds's contractors and subcontractors.

6. Allen Edmonds was required to have its contractors cooperate with Plaza Frontenac and correct any deficiencies noted by Plaza Frontenac.

7. All of the improvements became the property of Plaza Frontenac at the end of the lease. See *Newport*, 358 S.W.2d at 445 (noting that whether improvements revert to the owner at the end of the lease is but one factor to be considered in determining the intention of the parties); *Curtin-Clark Hardware Co. v. Churchill*, 104 S.W.476, 478 (Mo.App. 1907) (finding that the landlord intended to derive a substantial benefit by requiring that the improvements were to pass to the landlord instead of requiring restoration).

The foregoing demonstrates that the lease in this case required the work that Crafton and Vogel performed and that by requiring Allen Edmonds to make these

6

improvements, Allen Edmonds became Plaza Frontenac's agent for purposes of the mechanic's lien laws.

## C. The trial court misapplied the law on the question of whether Crafton and Vogel's improvements were substantial and permanent.

The trial court found that Allen Edmonds was not Plaza Frontenac's agent because the improvements made by Crafton and Vogel were not substantial and permanent in that, as compared to the entirety of the Plaza Frontenac mall, the improvements were in an area comprising less than one percent of the mall's space, and the value of the improvements was no more than two percent of the value of the mall. Plaza Frontenac and Allen Edmonds contend this analysis was proper pursuant to *Bates v. McKay*, 724 S.W.2d 565 (Mo.App.W.D. 1986).

We find, however, that the trial court's use of a mathematical equation comparing the relative size and value of the improvements to the overall size and value of the owner's property was a misapplication of the law. We note at the outset of our analysis that in section 429.010 there is no specific requirement that the improvements be "substantial and permanent." In fact, a mechanic's lien may be placed upon the owner's land for "any work or labor." The mechanic's lien statute has been amended over the years to include lien rights for persons who furnish or plant landscaping, to those persons renting machinery or equipment, and for the persons grading, excavating or filling the land. See § 429.010 (Supp. 1990) (extending lien rights to those who furnish or plant landscaping); § 429.010 (Supp. 2007) (extending lien rights to those persons renting machinery or equipment and for those persons grading, excavating, or filling the land). Work of this nature is service-based, often temporary in nature, and may not result in any improvements, but the legislature has chosen to make this type of work and labor recoverable under section 429.010.

7

While we acknowledge that whether improvements are substantial and permanent has become part of the mechanic's lien-agency analysis, the threshold to establish that improvements are substantial and permanent is not nearly as high as the trial court imposed on Crafton and Vogel here, nor is it amendable to a mathematical formula as the court applied here. See *Weis & Jennett Marble Co. v. Rossi*, 198 S.W.424, 425 (Mo.App. 1917) (holding "that the putting of marble wainscoting in one of the rooms . . . was an improvement of such nature as to fall within that class of cases where the improvement is to be held of substantial benefit to the estate of the lessor"); *Charles D. Jones Co., Inc. v. Cliff Manor, Inc.*, 668 S.W.2d 613, 615 (Mo.App.W.D. 1984) (finding mechanic's lien for installation of temperature control equipment proper where there was substantial evidence that at the time of installation that it improved the realty and enhanced its value).

Indeed, where the improvements are required and completed under the control of the owner with the view of improving the property, it is immaterial whether the owner ultimately benefits by the transaction and it is unnecessary to discuss the effect of the improvements on the property. See *Allen Estate Ass'n v. Fred Boeke & Son*, 254 S.W.858, 862 (Mo. 1923). In such a circumstance, the owner's interest is enhanced at least in such a substantial manner as to make the mechanic's liens recoverable. *Id.*; *Branick Constr. Co. Inc. v. Taylor*, 585 S.W.2d 282, 284 (Mo.App.W.D. 1979) (finding sufficient evidence to imply agency to tenant for purposes of subcontractors' mechanic's liens against the ownership interest of the property where the tenant hired subcontractors to remodel premises for restaurant purposes and the property owners were present during remodeling and supervised the work); see also *Campagna*, 397 S.W.2d at 626 (finding the benefit to the owner's reversionary interest obvious and presumed when a substantial building was constructed on previously undeveloped property).

8

Here, Plaza Frontenac not only required the improvements and approved the more than $207,000 bid, but it supervised and controlled how they were made. As a result, Crafton and Vogel were entitled to their mechanic's liens. See *Allen Estate Ass'n*, 254 S.W. at 862 (concluding that where the evidence showed that more than $100,000 was put into the property the reversionary interest of the lessor was therefore enhanced, if not to this extent, at least in such a substantial manner to entitle recovery of the mechanic's liens).

The issue is the owner's intent at the time of the agreement, not whether it turned out to be a wise decision or that it actually increased the property's value. See *Utley v. Wear*, 333 S.W.2d 787, 792 (Mo.App. 1960) (stating that it is a question of what the owner intended at the time the premises were improved, not whether the improvements actually enhanced the value of the premises).

We find therefore that the improvements carried out by Crafton and Vogel enhanced the value of Plaza Frontenac's property by replacing vacant tenant space with a shoe store and because the improvements were required by the lease, Missouri law permits the enforcement of the liens against Plaza Frontenac.

Further, we find *Bates*, the authority Allen Edmonds and Plaza Frontenac cite as justifying the court's use of a simple mathematical formula to determine agency, is readily distinguishable from the case at hand because in *Bates* the lease did not require the improvements. *Bates*, 724 S.W.2d 571-72. Thus, the critical fact upon which this case largely turns was not present in *Bates*. Moreover, unlike in *Bates* where the trial court compared the improvements in relation to the size of the leased building, the trial court here compared the improvements to the *entire mall*, not just the leased space. Thus, *Bates* is distinguishable in this regard as well.

9

We find that the trial court's comparison of the size and value of the improvements to the size of the entirety of the owner's property to be an inappropriate test that construes the mechanic's lien statute in favor of larger property owners over smaller property owners and against the rights of laborers and materialmen. Simply put, the size of an owner's property should not be the deciding factor in determining whether an agency relationship has been established for purposes of the mechanic's lien statute.

## Conclusion

For the reasons stated above, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

_____
James M. Dowd, Judge

Robert M. Clayton, III, P.J. and
Lawrence E. Mooney, J., concur

10