John McMahon et al., Respondents, *v.* H. Vickery et al., Appellants.

June 19, 1877.

1. A., a tenant of part of a building, employed B. to put therein shelving, a show-case, and a show-window, for trade purposes. B. obtained the materials therefor from C., for which he failed to pay. *Held*, that C. was not entitled to a mechanic's lien on the premises occupied by A., for the materials so furnished.

2. Plaintiff cannot reduce defendant's counter-claim by showing payments, made without defendant's knowledge or consent, to persons who claimed, but had no right to enforce, mechanics' liens against plaintiff for materials furnished to defendant, to be used by him in work which he was performing for plaintiff.

Appeal from St. Louis Circuit Court.

*Reversed, and judgment rendered.*

Laughlin & Cameron, for appellants : The material-man in this case could have no lien. — *Porter* v. *Toll*, 35 Mo. 107 ; *Hause* v. *Thompson*, 36 Mo. 450 ; *Hause* v. *Carroll*, 37 Mo. 578 ; *Bridwell* v. *Clark*, 39 Mo. 170 ; *Collins* v. *Mott*, 45 Mo. 102.

Hermann & Rainey, for respondents : That the material-man had a lien right, see *Collins* v. *Mott*, 45 Mo. 100 ;

*Koenig* v. *Mueller*, 39 Mo. 165 ; *Bridwell* v. *Clark*, 39 Mo. 170 ; *Putnam* v. *Ross*, 46 Mo. 337.

Lewis, P. J., delivered the opinion of the court.

This is a suit to enforce a mechanic's lien. The cause was tried upon an agreed statement of facts. From this it appears that the plaintiffs, McMahon & Creighton, did the plumbing work on a building which the defendants King, Vickery & Co. were erecting for the defendant Hartman, who was the owner. The work, amounting to $374.75, was completed on December 19, 1874. The statement says :

" During the time in which McMahon & Creighton were doing this work for King, Vickery & Co., King, Vickery & Co. were doing work for them on their leased property, north-west corner Sixth and St. Charles Streets. Both of the jobs were completed about the same time. Whilst McMahon & Creighton's claim against King, Vickery & Co. amounted to $374.75, their claim against McMahon & Creighton amounted to five hundred and twenty-six dollars ($526), and at the time of the institution of this suit the two firms were each indebted to the other in these sums respectively.

" McMahon & Creighton were carrying on the plumbing business at the north-west corner of Sixth and St. Charles Streets, in the city of St. Louis, and were tenants of the building in which they had their shops and did business. They did not own it, did not build it, and had no lease of the lot of ground upon which it stood ; they had only a lease of the building, or, rather, only of that part of it in which they had their shop, and for this they were required to pay rent by the month. They had no higher or greater interest in the property than that of such tenants. Their lease, through which alone they claimed any interest in the premises, was dated the 1st day of January, 1874, and was for the term of one year. This expired on the 31st of December of that year, and thereupon they took a new lease for the

further term of ten years from that date. The building was upwards of ten years old when they first leased it.

"The work done by King, Vickery & Co. for them was the putting up of shelving, a show-case, and show-window the entire length of the front, in this shop, mainly for the display of gas-fixtures. Their agreement with McMahon & Creighton was that they should furnish all the materials necessary and do this work, and that the accounts between them should be set off, the one against the other, the balance only to be payable in cash. King, Vickery & Co. wholly failed to pay for these materials, however, and also some of the labor employed."

The statement then proceeds to show that a number of the material-men under King, Vickery & Co. had taken steps to enforce mechanic's liens against the premises occupied by McMahon & Creighton, who thereupon paid off some of the claims, before or after judgment, but without the knowledge or consent of King, Vickery & Co. The statement concludes thus:

"It is conceded by the defendants that the lien of McMahon & Creighton is technically good, so far as the steps required by the statute to make it so are concerned, and that if the said sub-contractors of King, Vickery & Co. held good and valid liens upon the shop of McMahon & Creighton, or the building in which their shop was, and that, in discharging them, McMahon & Creighton had the right to pay them off as and when they did pay them, then they are entitled to a judgment in this case generally against the defendants King, Vickery & Co., and a special judgment against the property described in the petition for the full amount of their claim. But if said sub-contractors did not hold liens upon their said shop, or if McMahon & Creighton did not have the right in law to pay off said claims as and when they did so pay them, and now to take credit for them, then they are not entitled to any lien judgment in this case. And this court may give judgment herein according to the

rights of the parties, as to the court they may appear from this agreed statement and stipulation.''

The court found the plaintiffs' claim established in the sum of $474.75, and the defendants' counter-claim reduced by plaintiffs' payments upon the claims of material-men to $127.50, and rendered judgment in favor of plaintiffs for $347.55, charging the defendant Hartman's property, as described in the petition, with the lien as prayed for.

The only question reserved for our consideration is whether the material-men under King, Vickery & Co. were entitled to mechanics' liens against the premises occupied by the plaintiffs. If they were not so entitled, the payments to them by plaintiffs were voluntary, and, as these could not be credited on the defendants' counter-claim, no judgment could be rendered in favor of the plaintiffs.

Our mechanic's lien law is of purely statutory creation, and all its applications must be directed by interpretation of the language used by the law-makers. The 1st section of the act (Wag. Stat. 907), after describing for what objects the lien may be demanded, proceeds to declare upon what property it may be fixed. In the first category are work or labor upon, and materials, fixtures, engine, boiler, or machinery for, " any building, erection, or improvements upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor, or sub-contractor," etc. In the second are the " building, erection, or improvements," and " the land belonging to such owner or proprietor, on which the same are situated," etc. There is no difficulty in determining that, in these classifications, no place can be found for the material-men's demands under consideration. They arose from no dealing with any owner or proprietor, or his agent, trustee, contractor, or sub-contractor. But it is argued that the provisions of the 4th section are expressly adapted to those demands. This section introduces another class of objects upon which the lien may be fixed,

viz.: "Every building or other improvement erected" * * * "on leased lots or lands," * * * "and also the leasehold term for such lot and land on which the same is erected." Was the plaintiffs' shop, for which the materials were furnished, a building or improvement erected on a leased lot or land, within the meaning of the statute? Did the plaintiffs hold any leasehold term for such lot or land? We think that both questions must be answered in the negative.

The policy of permitting liens for erections on land is referrible to the estimation in which our law holds real estate, as property, in the highest sense. It operates upon that which is permanent, and wastes no energy on the floating and precarious tenure of chattel interests. It proceeds upon the principle of a right to have a security on the estate of the owner on account of the increased value given by the building to the land, and the natural injustice there would be in the owner's appropriating to his own use, without compensation, the toil and capital of others. It has uniformly been held that the building, erection, or improvement, in order to be reached by the lien, must have become part of the real estate, unless a different interest is clearly expressed in the statute. In Missouri, and some other States, the word "fixtures" is used. But this is held not to include mere trade fixtures, which a tenant may remove at the expiration of his term. Such is the opinion expressed in *Koenig* v. *Mueller*, 39 Mo. 168; though, from the language used with reference to an instruction refused, it seems difficult to reconcile that view with the conclusion reached. An explanation, however, appearing in *Collins* v. *Mott*, 45 Mo. 102, shows the Supreme Court's adherence to the rule as above stated. True, our statute (secs. 3, 4) authorizes the removal, under certain conditions, of improvements to which a mechanic's lien may attach. But this does no more than to recognize the physical possibility of removal as to things which, without special provision to the con-

trary, the law would consider inseparable from the soil. The objects of the lien must, in the first instance, be such as pertain to the realty. The statute modifies their accustomed incidents only so far as to permit their actual removal in specified cases.

The plaintiffs in this case were tenants of a room or shop in a building which, for aught that appears in the agreed statement, may have contained a dozen other apartments. They had no lease of the "lot or land" on which the house was situated. Other tenants may have occupied the premises over or under them, and so have had an equal interest with the plaintiffs in the ground whereon the building stood. The materials furnished were for mere trade additions, introduced as a temporary convenience, and removable by the tenants whenever they might cease to be such. These qualities or incidents were inherent in the additions themselves, and did not attach to them by any statutory effect, in modification of the common law. We are of opinion that the improvements made for the plaintiffs were not such as the statute contemplates, and that no mechanic's lien could be enforced on account of materials furnished therefor. It follows that the plaintiffs were not compelled to pay for the materials in protection of their property or rights ; and, not having any authority from the defendants to pay for them, they are entitled to no credit on account of such payments.

The amount, $474.75, found by the Circuit Court, instead of $374.75, as demanded by the plaintiffs, is admitted by the plaintiffs to be incorrect, and they offer to remit $100. Either with or without this *remittitur* the counter-claim will exceed the amount sued for, so that defendants would be entitled to a judgment for the difference. But they here waive that right, and ask for no more than their costs. The judgment below is, therefore, reversed, and a general judgment will be rendered here for the defendants. All the judges concur.