OTTUMWA IRON WORKS, Appellant, v. ROBERT MUIR et al., Respondents.

Kansas City Court of Appeals, November 4, 1907.

1. **MECHANICS' LIENS:** Leasehold: Machinery: Fixtures: Mines. Machinery furnished to the owner of a mine and not intended to become an immovable fixture does not lose its character of personal property and is not subject to mechanics' lien, which is only given where the machinery is converted into a part of the realty.

2. ——: ——: ——: ——: ——. Whether a chattel becomes a fixture is decided by its real or constructive annexation to the realty, its fitness to the uses of the realty and the intention of the party making the annexation. The last has the pre-eminence and the other two are chiefly of value as evidence to the third.

3. ——: ——: ——: ——: ——. The lessor and lessee may stipulate that machinery placed in a mine is to continue as personal property and the agreement will be enforced

between the parties regardless of its attachment to the realty. In such event the machinery is merely an attachment to the leasehold and may be removed during the term and is but personal property and not subject to mechanics' lien.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Higbee & Mills* for appellant.

(1) The court erred in directing a verdict for defendant Harle. His interest in the leasehold was clearly liable to plaintiff's lien under section 4206 Revised Statutes as amended in 1901, p. 206. Dougherty v. Churchill, 114 Mo. App. 578; Brick Company v. Brick & Quarry Co., 151 Mo. 516; Richardson v. Koch, 81 Mo. 264; Foundry & Machine Company v. Cole, 130 Mo. 1; Stone Company v. Gray, 114 Mo. 497, enforcing lien for stone for sidewalk and reversing same case, 43 Mo. App. 671, which Judge Gill was of opinion conflicted with Pullis v. Hoffman, 28 Mo. App. 666. (2) A coal mine is an "improvement," "not merely a hole in the ground," "and taken as a thing, if not a building, it is unquestionably an improvement, and an improvement on land." Lien enforced for coal cars, as coming within the meaning of "material." Central Trust Co. v. Coal Co.; Carwheel Co., intervenor, 42 Fed. 106, 9 L. R. A. (U. S. C. C.) 67; McDermott v. Claas, 104 Mo. 24 (lien for sidewalk and fence upheld). For a windmill, because it is an improvement. Phelps v. Windmill Co., 32 Neb. 19. A well is an improvement and lienable. Hoppes v. Baie, 105 Iowa 648; Bates v. Harte, 124 Ala. 427. Electric light wires strung on poles in streets. Supply Co. v. Light Co., 75 Mo. App. 622; 20 Am. and Eng. Ency. Law (2 Ed.), 303, par. 3. (3) Section 4206, R. S. 1899, gives a lien upon the material furnished as against the lessee. Stone Works v. Brown, 50 Mo. App. 411; Stone Co. v. Gray, 114 Mo. 497.

*Campbell & Ellison* for respondent, W. A. Harle.

(1) The right to a lien and the procedure for the enforcement of the lien, are purely statutory and unless there is a substantial compliance with the statute as to the manner of enforcing the lien, the lien will be denied. (2) The terms used in the mechanics' lien, statute "Fixtures, engines or improvements, etc," refers to and includes only such improvements and buildings as became when attached to the lands, a part of the land itself, for the obvious reason that the lien is upon lands, and not upon personal property. Graves v. Pierce, 53 Mo. 423; Richardson v. Koch, 81 Mo. 269. (3) Appellant seeks to enforce a lien against the machinery and two acres of land which is specifically described in the petition. The two acres so described was arbitrarily set off by the county surveyor under the directions of the appellant. There is no warrant or authority of law for such arbitrary designation.

JOHNSON, J.—Action to enforce a mechanics' lien for a part of the purchase price of hoisting machinery erected on mining property by the lessees thereof. Plaintiff, the manufacturer of the machinery, sold it to the lessees with knowledge of the fact that they intended to employ it in the operation of the mine.

Facts appearing in the record material to our present inquiry thus may be stated: On May 17, 1905, the owner in fee of certain mining property situated in Adair county executed and delivered a lease to E. H. Scriven and Robert Caswell by which he conveyed to the said lessees the coal beneath the surface of the land described and the right to mine it for a period of fifteen years. Among the provisions of the lease are the following: "Second parties (the lessees) shall have the use of two acres of surface on said land around where the shaft is now sunk, for the purpose of handling coal and loading the same into wagons, and may put up any

buildings on said two acres and sink any shaft or shafts that may be necessary for the handling of the coal. . . . Second parties are to have the privilege of removing any buildings, machinery or tools that they may purchase and use on said premises at the termination of this lease."

The lease was duly acknowledged and filed for record three days after its execution. On the day it was filed, the lessees conveyed by deed an undivided two-thirds interest in the leasehold to Andrew Steele, O. E. Pierson, Margaret Muir and Robert Muir. On August 4, Scriven conveyed his one-sixth interest to his colessees. On the 26th day of August, the lessees conveyed an undivided one-sixth interest to H. W. Riggin. On November 8th, Pierson, Caswell and Steele conveyed to W. A. Harle an undivided one-half interest, and on November 10th, Robert and Margaret Muir conveyed to said Harle an undivided one-third interest, all of which were promptly recorded, so that by these various conveyances, an undivided five-sixths of the leasehold became vested in Harle and the remaining one-sixth in Riggin.

On or about September 12, 1905, and before Harle acquired an interest in the leasehold, the owners thereof, Steele, Pierson, Caswell, Riggin and Robert and Margaret Muir, purchased of plaintiff (a corporation engaged in business at Ottumwa, Iowa) a hoisting engine and boiler, together with connections and appurtenances, and agreed to pay therefor the sum of seven hundred dollars. The machinery was received in due time by the lessees at Kirksville and hauled out to the mine where it was erected and placed in operation. Half of the purchase price was paid but the lessees failed to pay the remainder. The president of plaintiff company testified that shortly before the lien was filed, he visited the mine and saw the boiler and engine in position at the shaft. He states that "the boiler was on

a brick foundation, set up and connected on the foundation for hoisting the coal. It was at the shaft and appeared to have been there in that position for sometime. There is a shed over the engine and boiler and Mr. Harle was using the engine and boiler in operating the coal plant at that time." The manner of the attachment of the boiler and engine to the foundation, if any, is not disclosed.

The claim for lien was duly filed and it is stated therein that "a lien is claimed upon said leased premises and upon said improvements so sold and delivered and so erected upon said leased premises for the said balance of $350 and interest so due and unpaid on said account. Said Robert Muir, Margaret Muir, Andrew Steele, O. E. Pierson, Robert Caswell and H. W. Riggin were the owners as assignees of said leasehold in said lands leased to them as aforesaid, and at the time they were so erected as improvements on said leased premises as aforesaid and they were then holding said premises under a lease executed by the owner of the fee of said premises expiring about May 20, 1920."

It will be observed that Harle, who, at the time of the filing of the lien paper, was the owner of an undivided five-sixths interest in the leasehold, is not mentioned as one of the owners thereof, but in the petition subsequently filed, he was made a party defendant and his interest in the leasehold is attempted to be held subject to the lien therein asserted. Other facts appear in the record, but those stated control the disposition of the case. At the conclusion of the evidence, the jury, under a peremptory instruction, returned a verdict for defendant Harle, and it is from the judgment entered in his favor that the present appeal is prosecuted. As no claim is made that error was committed in the judgment as to the other parties defendant, it is not necessary to state the conclusion of that branch of the case.

One of the grounds urged by defendant Harle in

support of the judgment in his favor thus is stated in
his brief. "Under the statutes of this state a lien can
be enforced only against lands, and inasmuch as the
persons who purchased the machinery and put the same
upon the lands were lessees only and having by the
terms of the lease the right to remove the machinery
and improvements at the expiration of their lease, then
such machinery and improvements do not become a
part of the realty and are not lienable." Machinery
furnished to the owner of a building, factory or mine
which is not intended by the owner to become an im-
movable fixture to the land does not lose its character
of personal property and cannot be made the subject
of a mechanics' lien since the intention of the law is
to give a lien only in cases where the machinery is con-
verted from personalty into a part of the realty. And
in contests between lessor and lessee "the weight of the
modern authorities establishes the doctrine that the true
criterion for determining whether a chattel has become
an immovable fixture consists in the united application
of the following tests: (1) Has there been a real or
constructive annexation of the article in question to
the realty? (2) Was there a fitness or adaptation of
such article to the uses or purposes of the realty with
which it is connected? (3) Whether or not it was the
intention of the party making the annexation that the
chattel should become a permanent accession to the free-
hold, this intention being inferable from the nature of
the article, the relation and situation of the parties inter-
ested, the policy of the law in respect thereto, the mode
of annexation, and purposes or use for which the annexa-
tion is made. And of these three tests, pre-eminence is to
be given to the question of intention to make the article
a permanent accession to the freehold, while the others
are chiefly of value as evidence as to this intention."
[Press Brick & Mach. Co. v. Brick & Quarry Co., 151
Mo. l. c. 512; Hutchins v. Masterson, 46 Tex. 554; Ewell

on Fixtures, 21; Investment Co. v. Cunningham, 113
Mo. App. 519.]

Unquestionably, the lessor and lessee may stipulate
in the lease that machinery placed by the latter on the
leased premises during his occupancy shall continue to
be his personal property and such agreement will be
enforced between the parties to the contract regardless
of the nature of the attachment of the machinery to
the land.   If the present action were between the par-
ties to the lease, we would hold that the agreement giv-
ing to the lessees the right to remove any machinery
they might install for use on the demised premises evi-
denced an intention of the parties to treat such machin-
ery as a chattel of the lessees and, therefore, that it could
not be treated as a fixture to the freehold.   Cases in
other jurisdictions may be found in which it has been
held that a provision of this nature in the lease cannot
serve to change the character of the property so far as
third parties are concerned, and that the vendor of
machinery which the lessee attached to the premises in
a manner to constitute it a fixture but for such pro-
vision is entitled to a mechanics' lien against the ma-
chinery and the leasehold.   Thus in Dobschuetz v. Holli-
day, 82 Ill. 371, the Supreme Court of that State said:
"Whatever may have been the private agreement of the
parties, it is very clear the engine when set up and at-
tached to the realty as it was became a part of the estate
the lessee had in the premises.   No doubt the parties
could agree among themselves they would treat the en-
gine and other fixtures as personalty, but their private
agreement could not change the character of the prop-
erty so far as third parties were concerned.   The engine
and superstructure when attached to the soil became a
part of the estate of the lessee and, unless expressly re-
served, would pass to his grantee with the estate.   Under
the agreement of the parties, the lessee had the privilege
of removing all machinery and fixtures used in and

about the mines in prosecuting the work, but until severed, they constituted a part of the estate itself. Of this, we think there can be no question:" The same view was entertained by the Supreme Court of Iowa in Nordyke v. Woolen Mills, 53 Iowa 521. Plaintiff argues that when the hoisting machinery in question was placed at the shaft and connected with. the operation of the mine, it became an integral part thereof and, as it could not be removed without putting the mine out of condition to be operated, it was transformed into a fixture and was not a tool such as a pick or shovel which could be removed without injury to the mine itself; that, a coal mine is not merely a hole in the ground, but is made up of shafts, drifts, slopes, engines, machinery, platforms, cars, tracks, scales, etc., which in combination form a single entity, and in its entirety the mine is a building or improvement within the meaning of the mechanics' lien law since the term "building" as employed therein is not so restricted in its meaning that it refers only to a superstructure but may also describe a construction wholly underground. By this process of reasoning, plaintiff arrives at the conclusion that the engine and boiler in controversy are fixtures to the leasehold and therewith, subject to the operation of the mechanics' lien law.

All of this except the final conclusion may be conceded for argument (though we decided differently in Meistrell v. Reach, 56 Mo. App. 243), and still we are unable to find in the argument of plaintiff or in the authorities of which the Illinois and Iowa cases to which we have referred are typical, a sufficient reason for sustaining the lien. In Press Brick & Mach. Co. v. Brick & Quarry Co., supra, the Supreme Court, speaking through Judge MARSHALL, held there can be no lien "where a tenant puts in machinery under a lease which reserves to him a right of removal, for in such cases a chattel never becomes a part of the realty." Though

the statement of this unqualified rule may not have been necessary to the decision of that case, we are satisfied with the correctness of the rule itself and think it should be applied to the present case. As we observed before, for an improvement to be the subject of a lien, it must become a part of the freehold. If it become merely an attachment to the leasehold under the contract of the parties to the lease that it may be removed during the term, it is not real, but personal property. "Though a lessee has an estate in the land, it comprises no more than his interest in the term, and gives him merely a right to occupy the ground for the time agreed. . . . The interest in the lease is a right of occupancy, and hence it is a chattel real; but fixtures which are not part of the freehold as to the lessor or anyone else, are chattels personal, which cannot be bound as a part of the lessee's estate in the ground, even if his lease were bound." [Church v. Griffith, 9 Barr. 117; White's App. 10 Barr. 252.] By no sort of logic may it be said that a chattel annexed to a chattel may, by the fact of annexation, become realty. The clear purpose expressed in section 4206, Revised Statutes 1899, which provides for "a lien in cases of leased property" is to confer the right to a lien against a building or improvement to the leasehold term only where the building or improvement is annexed to the freehold and not where personal property such as machinery and the like is placed on the land for use during the term for which the property is leased.

What we have said necessitates the conclusion that no error was committed in sustaining the demurrer to the evidence and, accordingly, the judgment is affirmed. All concur.