C. W. MASTERSON, Appellant, v. FLORENCE ROBERTS, JACK ROBERTS, RAYMOND ROBERTS, FLORA GRIFFIN, MAUD WRIGHT, ROSAMOND ALLEN, WILLA GRIFFIN, BESSIE QUROLLO, GRACE GRIFFIN COOK SCHULENBERG, JESSE GRIFFIN SKINNER, JAMES G. GRIFFIN, A. C. LUCAS, S. J. THOMPSON, S. J. PORTER, ALBERT M. OTT, Trustee, FRED M. SHELTON and J. C. SHELTON, A. L. WILSON LUMBER COMPANY, OSCAR G. BESSMER, MARTIN-WELCH HARDWARE & PLUMBING COMPANY, a Corporation.—78 S. W. (2d) 856.

Division One, December 21, 1934.

*E. C. Hamilton* for appellants.

*Burrus & Burrus* for respondents.

HYDE, C.—This is an action in equity brought under Section 3180, Revised Statutes 1929, to determine the rights, of mechanic's lien claimants and others, in a building and lots in the city of Independence. Plaintiff was a contractor who altered the building. Defendant James G. Griffin had a life estate in the property under the will of his deceased wife, and his children, entitled to the remainder in fee under their mother's will, are also defendants. The lessees of the building, who contracted for the work, the trustee and beneficiaries of the first mortgage on the property, and the materialmen who furnished material which was used in the alteration of the building, are the other defendants. The petition alleged that the contract for alteration of the building was made with the lessees of the building with the consent and approval of all of the owners thereof. The answers of the defendants who furnished material claimed liens, likewise, against all the property. The answer of the life tenant and the owners of the remainder in fee was a general denial and also set up that Section 3160, Revised Statutes 1929, which purports to give a lien on leased property and buildings thereon for improvements, alterations or repairs done under contract with the lessee, was unconstitutional, in violation of Sections 15 and 30 of Article II of our Constitution. This is the basis of our jurisdiction as the liens claimed were in the aggregate far below our jurisdictional amount. The court

162

in its decree found that the mortgage was the first lien (this was never questioned); that the accounts of the contractor and materialmen were correct and entered judgment against one of the lessees therefor, the other having been adjudicated a bankrupt; and further found "that said items do not constitute a mechanic's lien against the above-described premises." The contractor and some of the materialmen have appealed from this decree and will hereinafter be referred to as appellants.

The evidence did not show a contract with the owners of the fee, but showed that James G. Griffin, the life tenant, had been in possession since his wife's death and had used the building as a garage, tire and battery shop; that on October 10, 1929, he leased it to the defendants Lucas and Thompson for five years beginning November 2, 1929, at a rental of $125 per month; that this lease recited that the building was leased "to be used for the purpose of a picture show house;" and that it stated that "lessee has permission to make any changes his business requires." The building was altered to make it suitable for a moving picture theater by raising the ceiling, by fixing the roof, by removing the concrete floor, by excavating so that a floor could be put in which sloped down from the back of the building to the stage, by bracing the walls, where the excavation was made, with concrete piers, by building a new front, lobby, ticket office, picture machine booth, toilets and stage, and by making other minor changes. The building was furnished and opened for business the latter part of November but the venture was unsuccessful. Only a little more than one month's rent was paid, when, after the show had been operated about two weeks, Mr. Lucas, who had become ill, left. Mr. Thompson ran the show for about another week, and then turned it back to Mr. Griffin, the life tenant. The lease was later returned to him and canceled and he, thereafter, operated the picture show himself for some time and still later leased it to others. Mechanic's liens were filed in the early part of 1930, apparently after Mr. Griffin had obtained possession of the building and was operating the show himself. There was evidence to show that Mr. Griffin was frequently on the premises while the alterations were being made by the lessees, made suggestions about the manner of carrying on the work, and insisted on some changes being made in the plans. The only thing that was shown concerning any of the owners of the fee, however, was that some of them knew what was going on and made no objection to it. Mr. Griffin said that whatever he got out of the building or picture show he used for himself for whatever he wanted to. He was eighty-one years of age at the time of the trial, and died before the hearing of this case here.

Appellants claim the right to a lien against the building and the lots upon which it is located, not only as to the life estate of the lessor, but as to the owners of the fee simple title as well, under

Section 3160, Revised Statutes 1929. There was much irrelevant evidence in this case about whether or not the alteration of the building made the property more valuable. That is a question which the owner decides for himself, when he authorizes the improvements made, and he is bound by his own decision so that it makes no difference so far as a lien against the premises is concerned whether his judgment was good or bad. It is clear that when the owner of the life estate made the contract in the lease which, because of his conduct, verbal directions, and the condition of the building, by necessary implication if not by direct statement, clearly obligated the tenants to alter the building from a garage to a moving picture theater, by requiring substantial alterations, he made these lessees his agents within the contemplation of the mechanic's lien statutes to make such improvements; and that the mechanics and materialmen, with whom the lessees contracted, were entitled to a lien upon the lessor's life estate not under Section 3160, Revised Statutes 1929, but under the general lien statute, Section 3156, Revised Statutes 1929, applying to improvements made ''by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor.'' [Powell v. Reidinger (Mo.), 228 S. W. 503 (where it was attempted to raise the constitutionality of the section now questioned), and cases cited; Ward v. Nolde, 259 Mo. 285, 168 S. W. 596, and cases cited; Allen Estate Assn. v. Boeke, 300 Mo. 575, 254 S. W. 858; Ann. Cas. 1916C, 1133; 79 A. L. R., note 962.] Therefore, appellants were entitled to a lien upon the life estate of James G. Griffin and the trial court should have so held and decreed. However, James G. Griffin's life estate having terminated, this is now a moot question and need be given no further consideration.

It is further beyond question the law that ''a tenant as such is not the agent of the owner so as to establish a lien against the land of the owner for improvements made by the tenant;'' and that showing only the owner's knowledge of and acquiescence in the making of improvements by his tenant is ''not a sufficient showing to constitute the tenant, the agent'' of the owner. [Allen Estate Assn. v. Boeke, 300 Mo. 575, 254 S. W. 858; Martin-Welch Hardware & Plumbing Co. v. Moore (Mo. App.), 16 S. W. (2d) 667; Ward v. Nolde, 259 Mo. 285, 168 S. W. 596; Winslow Bros. Co. v. McCully Stone Mason Co., 169 Mo. 236, 69 S. W. 304; Dierks & Sons Lbr Co. v. Morris, 170 Mo. App. 212, 156 S. W. 75; Powell v. Reidinger (Mo. App.), 234 S. W. 850, and cases cited; 79 A. L. R. 962, note.] There was no more than knowledge and acquiescence shown as to the owners of the fee in this case and even that was not shown as to all of them. An owner must be bound by the method stated in Section 3156 or there can be no lien against his land, although there may be a lien against certain improvements thereon, with the right to remove them under Sections 3159-60. There might be cases of estoppel but there is no estoppel

pleaded or proven here. What is pleaded is a contract with the owners of the fee (some of the answers did not even allege that) and, as to this, there is total failure of proof. Since the life tenant was in possession, the owners of the remainder had no right to interfere with his possession and use, so long as he was not committing waste and were entitled to consider that the alterations were being made on the credit of the lessees and the life estate. We, therefore, hold that appellants were not entitled to a mechanic's lien against the fee under Section 3156, Revised Statutes 1929.

There remains for consideration the question of whether Section 3160, Revised Statutes 1929, gives appellants a mechanic's lien upon either the building or the lots as against the owners of the fee simple title and if so whether or not it is constitutional. The early history of this section is stated in O'Brien Boiler Works Co. v. Haydock, 59 Mo. App. 653, as follows:

"This section was first adopted in 1857 (Laws 1856-57, p. 668) as part of a mechanic's lien law specially applicable to St. Louis County, but was incorporated in the general mechanic's lien law applicable to the whole State in the Revision of 1865, and has remained part of said law ever since."

The first clause of the original statute stating what improvements shall give rise to a debt and what property shall be held therefor was originally as follows:

"*Every building or other improvement erected*, or materials furnished (therefor?), according to the provisions of this article, on leased lots or lands, shall be held for the debt contracted for or on account of the same, and also the leasehold term for such lot and land on which the same is erected." [Sec. 6708, R. S. 1889, Sec. 4206, R. S. 1899.]

This section was amended in 1901 to include licensed as well as leased property. [Laws 1901, p. 206, Sec. 8216, R. S. 1909.] It was repealed and reenacted in its present form in 1911. [Laws 1911, p. 312.] The first portion as reenacted now reads:

"*Every building, erection, improvement and plant erected, constructed, reconstructed, altered or repaired* and all materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery and other personal property furnished, *repaired or placed* on licensed or leased lots or lands shall, regardless of whether or not the owner of the license or lease has the right thereunder to remove the same or other personal property from such licensed or leased premises during or at the end of the term thereof, be held for the debt contracted for on account of the same and also the licensed interest or leasehold term for such lot and land on which the same is placed, repaired or erected."

There was also contained in the new section, which was not in the old, the following provisions:

"Every mechanic, person or corporation who shall *do or perform any work or labor upon* or furnish, place *or repair any building, plant* improvement, erection, material, fixture, engine, boiler, pump, belting, pulley, shafting, machinery or other personal property upon either licensed or leased lots or lands under or *by virtue of any contract or account with the owner or proprietor of the license or lease* or with his or its agent, trustee, contractor or· subcontractor, upon complying with the provisions of this article, *shall have* for his work or labor done or building, erection, improvement or plant erected, constructed, reconstructed, altered or repaired or material, fixture, engine, boiler, pump, belting, pulley, shafting, machinery or other personal property furnished, placed or repaired, *a lien upon such building, plant, improvement, erection* and also upon such materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery and such other personal property and also upon the license or lease on such lots or lands to the full extent of the number of acres or lots held under such license or lease by the owner thereof, and regardless of whether or not the owner of such license or lease has the right thereunder to remove either during or at the end of the term thereof such building, plant, improvement, erection, materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting or machinery or other personal property thereon.''

The remaining portion of the section in regard to the right of removal when the lessee has forfeited his lease is substantially the same as the original section has always been from the time of its enactment up to 1911 except that, instead of giving the right merely to remove improvements, it is stated that the purchaser shall have the right to remove ''buildings, erections, plants, materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery or other personal property.'' It is apparent that it was intended by the Act of 1911, to materially widen the scope of the section. However, we find nothing in it which purports to give a lien upon the owner's interest in the land. [See Baumann v. Horn (Mo. App.), 204 S. W. 53.] That is done only by Sections 3156-57-58, Revised Statutes 1929. Section 3160 only applies to a contract on account (by which the owner is not bound) ''with the owner or proprietor of the license or lease or with his agent,'' etc.; and it only gives a lien upon the ''building, plant, improvement, erection, . . . materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery, and such other personal property,'' upon which work or labor is done or which is ''erected, constructed, altered or repaired,'' or for which material or the named fixtures and other personal property is ''furnished, placed or repaired;'' and the lienor is limited to ''the right to remove the same within sixty days after the purchase thereof.'' Therefore, the trouble with Section 3160 is not that it undertakes to grant any lien upon the land of the lessor for improvements for which he

did not contract either himself or by agent; but we think that it goes too far in attempting to give a mechanic or materialman the right to remove a building or other improvement or fixtures, from the owner's land, merely because he has "reconstructed, altered or repaired" it or furnished material for that purpose under a contract with the lessee only. Why is a mechanic or materialman who makes improvements for one having no title in any better position than one who takes a deed or a mortgage from one having no title? Either can determine the condition of the title from public records before he makes his contract. It is proper to allow the removal of what is put on if it is a structure or fixture which can reasonably be removed without taking more with it. Is it, however; proper to allow a building to be taken, which was put on the land by the owner, merely because it was repaired under a contract with a stranger to the title? Could that be anything else but taking the owner's property without due process of law? The original section did not authorize any such thing (it said "building or other improvement erected"). We find this is also true of Section 3159, providing for a lien, with the right to remove "buildings, erections, and improvements . . . erected or put" upon mortgaged land. Surely a mechanic or materialman who improves leased land without a contract with the lessor is in no better position than one who improves mortgaged land without a contract with the mortgagee.

It would seem that one of the principal reasons for the enactment of the new statute in 1911 was the fact that it had been theretofore held that a trade fixture was not subject to a mechanic's lien because it retained its character as personal property and did not become part of the realty. [Ottumwa Iron Works v. Muir, 126 Mo. App. 582, 105 S. W. 29; Carrol v. Shooting the Chutes Co., 85 Mo. App. 563; O'Brien Boiler Works Co. v. Haydock, 59 Mo. App. 653; McMahon v. Vickery, 4 Mo. App. 225.]. In the Carroll case it was said: "They (fixtures) remain personalty and the security of the mechanic who constructs them is in the enforcement of his artificer's lien." This was not a very satisfactory remedy and was complicated by the fact that, as said in the Muir case, in determining whether or not a fixture becomes real estate or remains merely a fixture, "pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold." This would be a difficult question for a mechanic or materialman to determine before the evidence in each case was heard. Mechanics and materialmen were entitled to a better remedy and the Act of 1911 properly gave them a lien on the various articles named, as well as on new buildings and other structures erected by their work or material. But was the Legislature authorized to go further than the "mortgaged lands" section and grant the right of removal of anything merely because of its reconstruction, alteration, or repair?

The construction of Section 3159, as to right of removal of improvements upon mortgaged property, has uniformly been "that this language refers to the construction of an independent or detached building, improvement or erection on the land, placed thereon subsequent to a deed of trust or mortgage, and that it does not refer to an improvement, alteration, repair or reconstruction of a building before made and standing when the mortgage was given nor to an addition to it." [May v. Mode, 142 Mo. App. 656, l. c. 671, 123 S. W. 523; Schulenberg v. Hayden, 146 Mo. 583, 48 S. W. 472; Jones Lumber Co. v. Snyder, 221 Mo. App. 1227, 300 S. W. 850; Lowry-Miller Lumber Co. v. Dean, 225 Mo. App. 299, 29 S. W. (2d) 736; Id. 47 S. W. (2d) 164.] This court said in the Schulenberg case:

"The true construction to put on Section 6707, Revised Statutes 1889 (mortgaged lands section), is that if there is a mortgage on the *land*, and a contractor, under contract with the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the *house*, and the *house* may be sold, and may be removed from the *land* by the purchaser, for this preserves to the mortgagee all the security he formerly had, and secures, as far as possible, the payment to the contractor for the work and materials he employed in building the house. . . . (It) does not authorize the mechanic's lien to take priority over the mortgage or the sale of the reconstructed *house* and its removal. It may be that the reconstruction of the house would increase the security of the mortgagee, but he is not bound to rebuild the house—he may be content with his security of the land and the ruins of the house. . . . '*Under a different rule it would be in the power of the mortgagor to destroy the security by erecting costly improvements*, the expense of which the estate improved would not be able to pay.' . . . Where the old and the new would have become inseparable parts of a whole house, . . . nothing short of a sale of the whole and a division of the proceeds could possibly divide the interests of the mortgagee and of the lienor under the mechanic's lien law. It would require more wisdom than Solomon had . . . to work under such a rule at all satisfactorily. . . . Where the mortgage covers the land and the house both, and the house is partially destroyed by fire, the mortgagee is powerless to prevent the owner from reconstructing it . . . he has a right to rely upon the assumption that the contractor is doing the work of reconstruction on the credit of the equity of redemption and of the owner. The mortgagee is, therefore, under no obligation to the contractor to speak, and his silence cannot prejudice his rights." [See, also, Gold Lumber Co. v. Baker (Mo. App.), 36 S. W. (2d) 130; for a discussion of such cases see University of Missouri Bulletin, 48 Law Series 5, l. c. 22-30.]

Is it not apparent from the language of these cases that the right to a lien upon and removal of improvements given by the statute was

limited, by such a construction, to new buildings, because of doubt that it could be upheld if it had given the right to sell and remove an old building upon which the mortgagee had a lien which had only been reconstructed, altered or repaired? However, in the case of a mortgage the question is one of priority between liens (see Gleissner v. Hughes (La.), 95 So. 529) and whether or not such a statute could be said to deprive a subsequent mortgagee of part of his security without due process of law, we think that it would so deprive an owner of his property if, under a contract with a lessee, without the owner's consent, a lien is granted upon the owner's existing buildings, machinery or other property, with the right to sell and remove them, for merely reconstructing, altering or repairing them. That is the right which the lien claimants seek in this case and it is what the express language of Section 3160 gives them. It would be especially harsh, in this case, to take from the owners of the fee a building which, after somewhat superficial alterations remained substantially the same building that it was before, which was altered under contract entered into by lessees, whose lease the owners of the fee did not sign; and which was made when they did not even have the right of possession of the property. Statutes in other states which have attempted to authorize a lien upon an owner's property for work done without his consent or to otherwise interfere with his right to make his own contracts have been held unconstitutional. [18 R. C. L. 876, sec. 4; 40 C. J. 46, sec. 6, pp. 103-107, secs. 93-98; L. R. A. 1917D, 577, note; 4 Ann. Cas. 621, note; Stimson Mill Co. v. Braun (Cal.), 68 Pac. 481; 89 Am. St. Rep. 116, 57 L. R. A. 727; John Spry Lumber Co. v. Sault Savings Bank, Loan & Trust Co. (Mich.), 43 N. W. 778, 18 Am. St. Rep. 396, 6 L. R. A. 204; Santa Cruz Rock Pavement Co. v. Lyons (Cal.), 48 Pac. 1097, 59 Am. St. Rep. 174; Malone v. Hosfeld, 53 Pa. Super. 134; McCaig v. Yoch, 24 Pa. Dist. 87; Meyer v. Berlandi (Minn.), 40 N. W. 513, 12 Am. St. Rep. 663, 1 L. R. A. 777; Chears Floor & Screen Co. v. Gidden (Miss.), 131 So. 426.] As said in the Spry Lumber Company case, to make a contract with a stranger to the title the basis of a lien, upon property of the owner, "strikes at the foundations of all property in land. There is no constitutional way for divesting a man's title except by his own act or default. Here his own act is not required, and his freedom from default is no defense." The mechanic or materialman can protect himself by getting the approval of an owner or mortgagee before he does the work or by only working upon or furnishing material for removable improvements. We hold that part of Section 3160, Revised Statutes 1929, which, under a contract with the lessee only, authorizes a lien upon, and grants the right to remove thereunder, existing buildings, erections, plants, fixtures, engines, boilers, pumps, machinery and other like property for work done or material furnished when they have been merely reconstructed, altered or repaired, to be in violation of Section 30 of

Article II of our Constitution and void. With these words stricken the statute would be a complete and valid act giving full and proper rights and remedies to mechanics and materialmen and it is therefore upheld except as above stated.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.