AMERICAN SASH & DOOR COMPANY, RESPONDENT, v. MAURICE R. STEIN, ET AL., DEFENDANTS, MAURICE R. STEIN, RESPONDENT, NATIONAL FIRE WORKS DISTRIBUTING CO., APPELLANT.—96 S. W. (2d) 927.

Kansas City Court of Appeals. May 25, 1936.

*Smart & Strother* for respondent.

*John M. Cleary* and *Sloane Turgeon* for Maurice R. Stein.

*R. A. Kope* and *Jay Oldham* for appellant.

REYNOLDS, J.—This is an action in equity to enforce mechanics' liens. The National Fire Works Distributing Company is the owner of the property sought to be held. The property consists of a two-story, brick building and two lots, known as 506 West Sixth Street, Kansas City, Missouri. The defendants O. S. Stratton and M. E. Brown were the lessees of this building under a written lease entered into on March 30, 1933, with the National Fire Works Distributing Company. Plaintiff's petition proceeds (as does defendant Maurice R. Stein's amended answer and intervening petition) on the theory that the lease constituted defendants Stratton and Brown, the lessees, the agents of the National Fire Works Distributing Company, for the purpose of making certain improvements on the building and gave the lessees authority to subject the fee title to the liens of material-men and workmen.

A trial resulted in a personal judgment in favor of plaintiff and against defendant Maurice R. Stein in the sum of $239.27; the defendant Stein recovered a personal judgment against his codefendants, lessees O. S. Stratton and M. E. Brown, under his amended answer and intervening petition, in the sum of $861.25 with interest; and plaintiff's and defendant Stein's mechanics' liens were sustained against the leasehold interest of the defendant lessees and also against the building and freehold interest of the defendant National Fire Works Distributing Company, which company is the sole appellant.

In appellant's answer, it admits that it is the owner of the fee simple title to the property in controversy; and the answer also contains a general denial.

The lease in question let the premises to the lessees "in its present condition, for the purpose of Recreation and Sales Office for a term of two (2) years, beginning May 1st, 1933, and ending April 30th, 1935," at a monthly rental of $100. The lease is on a regular printed form with a printed heading, "Store Lease." It contains seven printed and serially numbered paragraphs, prefaced by the printed statement: "The lessee covenants and agrees with the lessor as follows:" After the printed paragraph numbered 7, there is inserted in typewriting the following provision:

"Lessor grants to Lessees the right, privilege, and option to purchase the described property herein at any time during the life of this lease, for the total sum of Ten Thousand and no/100 ($10,000.00) Dollars; and lessor agrees in case lessees elect to purchase the property to convey same by good and sufficient deed giving good title; as part consideration of this lease lessees agree to expend the sum of approximately Fifteen Hundred to Two Thousand Dollars on the property."

The lessor (appellant) is an Arizona corporation with its home office in Boston, Massachusetts; and the lease was signed there by appellant by its treasurer, having been mailed to it from the office of its agent, Mr. Ennis, in Kansas City, after signing by the lessees. After the execution of the lease and pursuant to the obligation imposed by it on the lessees, they made a contract with defendant Stein whereby he agreed "to furnish the necessary labor and material to remodel the building located at 506 West Sixth Street Trafficway, Kansas City, Missouri, the work to consist of the following:

"Walls in front room to be paneled 7'0' high, with the exception of 30" behind back bar; build two toilet rooms 6'x8' plastered on both sides; build kitchen about 10'x12', plastered on inside; build partition in rear room twenty-five feet back; walls in rear room to be plastered on brick, new wall to be covered with wall board; change front entrance as shown on plan; close lower part of front windows; stucco outside; install thirty outlets, for lights, plugs, etc.

"Plumbing to consist of one urinal, two toilets and two lavatories; connect all necessary drains and pipes and fixtures to be used.

"Floor one room 42'x50' and one room 42'x25', with factory grade maple flooring over 2"x2" furring strips spaced 16" on center; all floor to be oiled with hot linseed oil, except part used for dancing, which will be shellaced and waxed.

"Build raised platform for orchestra, sixe 7'x12'.

"Build check stand back of orchestra platform, size 6'x12'.

"Build one room for office, size 10'x12', in back of rear partition.

"Ceiling in rear rooms to be covered with wall board."

The consideration recited in the contract was $1222. Extras under this contract amounted to an additional $613.67. There was, also, a subsequent contract for $25. $1095 has been paid, leaving due and unpaid $765.67. Defendant Stein performed all of the work and furnished all of the material under his written contracts and the extra work and materials requested by lessees, and the trial court found that all of said labor and material was furnished for and used in the remodeling of the building in question.

This building had formerly belonged to the Burnham-Munger-Root Dry Goods Company and had been used by it as a stable for its horses and later as a garage for its trucks and was bought from it by appellant. Appellant itself occupied it for a while and, also, leased it to a subsidiary company of its own; but, for several months before the lease here in question was made, the property was vacant and produced no income.

Respondent American Sash and Door Company sold and delivered to defendant Stein materials which were to be used by him in remodeling and improving the building and which were so used by him, for which the sum of $213.12 remained due and unpaid.

Mr. Ennis, the agent of appellant in Kansas City, leased the property, had the lease signed by the lessees in his office, and mailed it to appellant at its home office in Boston where it was signed in appellant's name by its treasurer and sent back to Mr. Ennis. He was familiar with its terms and provisions and knew that the improvements were being made. The lessees occupied the property and paid six months' rent and then moved out owing $1800 under their lease. Thereupon, appellant leased the property to another, with the improvements put in by respondents, who paid two months' rent and later moved out owing appellant $200. Thereupon, appellant leased the property with the improvements to a third person who paid $100 but never moved into the property.

The evidence shows that both respondents relied not only upon the personal responsibility of the lessees but also upon the property itself for the payment of what was due them for the labor and material put into the property.

· After unsuccessful motions for a new trial and in arrest of judgment, the defendant National Fire Works Distributing Company appeals.

## Opinion.

1. The sole question presented on this appeal is: Have respondents liens against the interest and estate of the appellant in the real estate described in the petition as lots 27 and 28, Cottage Place, an addition to. Kansas City, Kaw township, Jackson county, Missouri, also known as 506 West Sixth Street, Kansas City, Missouri, and the two-story, brick, business building located thereon by reason of having furnished the material and labor therefor in remodeling said building and in making certain repairs and improvements thereon under a contract with appellant's lessees?

Whether the respondents have such liens depends on whether, by implication of law, the appellant, by its written lease, constituted Stratton and Brown (its lessees) as its agents with authority to subject its fee in said property to the liens of materialmen and laborers furnishing materials and labor which went into the improvements, for which the lessees under the contract were bound to pay. [Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578, 90 S. W. 405; Curtin-Clark Hardware Co. v. Churchill, 126 Mo. App. 462, 104 S. W. 476.] The circuit court decided they have such liens.

2. From an examination of the facts in the record in this case, we are convinced that it is controlled by the law as declared in the following cases: Dougherty-Moss Lumber Co. v. Churchill, supra; Curtin-Clark Hardware Co. v. Churchill, supra; Winslow Bros. Co. v. McCully Stone Co., 169 Mo. 236, 69 S. W. 304; Ward v. Nolde, 259 Mo. 285, 168 S. W. 596; Allen Estate Assn. v. Fred Boeke & Son, 300 Mo. 575, 254 S. W. 858; Masterson v. Roberts (Mo.), 78 S. W. (2d) 856; Concrete Engineering Co. v. Grande Building Co. (Mo. App.), 86 S. W. (2d) 595. We have examined all the other authorities cited by appellant but do not find any of them conclusive or persuasive, on the question herein involved.

3. The liens sought to be enforced arise under Section 3156, Revised Statutes of 1929, which provides:

"Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of this article, shall have for his work or labor done, or materials, fixtures, engine,

boiler or machinery furnished, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre; or if such building, erection or improvement be upon any lot of land in any town, city or village, then such lien shall be upon such building, erection or improvements, and the lot or land upon which the same are situated, to secure the payment for such work or labor done, or materials, fixtures, engine, boiler or machinery furnished as aforesaid.''

4. The evidence shows that appellant is the owner of the fee simple estate in the property involved; that, on March 30, 1933, it executed a written lease to O. S. Stratton and M. E. Brown, whereby it leased the same to them for the term of two years from May 1, 1933, for the purpose of recreation and a sales office. At the time of the execution of the lease, the property was vacant. It yielded no income and was nonproductive and had been so for a period of three or four months. It was not suitable for the uses to which the lessees were required to put it. It had formerly been used as a stable for horses and as a garage for trucks and as a sales and store room. It was in the rough and had no future as an income yielding proposition in the condition in which it then was. The lease in question provided that the same should be taken by the lessees in the condition that it then was but provided also that it should be used by the lessees as a recreation parlor and sales room and required them to expend the sum of $1500 to $2000 for the improvement and remodeling thereof. The manifest object of said requirement was to place the property and the improvements thereon in a condition in which they would be productive of income and be a betterment of the freehold interests therein held by the appellant. In other words, the property was to be transformed from a nonproductive proposition to one intended by the appellant to be a productive proposition. The requirement as to the expenditure of said sum of money by the lessees was peremptory and was not at their option. Immediately upon taking possession of the property under the lease, the lessees entered into a contract with the defendant Stein, whereby he agreed to furnish the necessary material to improve and remodel the building on said property for the sum of $1222, the improvement to be made embracing the furnishing of materials and the doing of labor of a substantial and permanent character, which would inure to the benefit of the freehold estate and would not be thereafter possible of separation and detachment. Extras under this contract, found to be necessary, amounted to $613.67; an additional contract for the sum of $25 covered additional expenditures in the matter of material and labor not included in the former.

Stein fully complied with his contract and in order fully to execute the same made purchases of certain materials from the respondent American Sash and Door Company which were furnished and delivered by such respondent and went into the repairing and remodeling of the property.

5. The appellant, at the time of the execution of the lease, knew that the property, in the condition it then was, was not suitable for the uses contemplated by the lessees and the uses to which the lessees were required to put it. It, through its agent, knew, at the time, that the repairs, improvements, and other alterations made in the remodeling of said building were being made; and it made no objection thereto. All of the improvements made were of a substantial and permanent character, by which a substantial betterment to the freehold estate was effected, and were intended so to be by the lessor. The contract is not susceptible of any other construction.

This is not a case where the appellant as lessor merely gave consent to the lessees at their option to make alterations and improvements for their own benefit and at their own expense; nor is it a case for ordinary repairs for which the tenant in the absence of a contract with the lessor is alone liable; but it is a case where the lessees are peremptorily required by their contract to make expenditures substantially and permanently improving the property, amounting to the betterment of the leasehold to the extent of at least $1500 to $2000. If it were a case of mere consent, the lessor's consent would impose no obligation on the lessees to make the improvements; and, in the absence of such obligation, the appellant, as lessor, could not be said to have contracted for such improvement; and its freehold and reversionary interest in the property would not be held subject to liens for material and labor which entered into the improvement. But the lessees being obliged peremptorily to make such alterations and improvements, a different case is presented.

In Dougherty-Moss Lumber Company v. Churchill, supra, 114 Mo. App. 578, l. c. 584, this court said in its opinion disposing of the facts in that case: "In effect the lessor burdened the lessee with the obligation to make and pay for the necessary alterations. . . . It was to receive a theater for a hotel. Evidently the metamorphosis accomplished at such great expense was for its benefit as well as that of the termor."

In the instant case, the lease was for a term of two years only and at a rental of $100 per month. The character of the improvements made was such that they could not be separated and detached from the property at the end of the two years or thereafter but would remain attached to the property. From the substantial and permanent character of the improvements made and from their character of in-

separability from the property, the conclusion is to be reached in the instant case that the owner of the freehold intended to derive substantial and permanent benefits therefrom.

After review was made of the authorities in the Dougherty-Moss Lumber Company Case, supra, it was held as follows [114 Mo. App., l. c. 586]: ". . . it may be considered as settled that when a lessor contracts with his lessee for the making of improvements of substantial benefit to the estate of the former, materialmen and workmen who furnish material and labor in construction of the improvement are entitled to liens for their unpaid accounts, which may be enforced against the estates of both lessor and lessee." This, we take to be the settled law in Missouri. [Curtin-Clark Hardware Co. v. Churchill, supra; Winslow Bros. Co. v. McCully Stone Co., supra; Ward v. Nolde, supra; Allen Estate Assn. v. Fred Boeke & Son, supra; Masterson v. Roberts, supra; Concrete Engineering Co. v. Grande Building Co., supra.]

It was further held in the case of Curtin-Clark Hardware Co. v. Churchill, supra, l. c. 467, 468, and 469 of 126 Mo. App.:

"In cases where the lessor, either in the lease or otherwise does nothing more than consent that the lessee at the latter's option may make alterations or improvements in the premises for his own benefit and at his own cost, such consent imposes no obligation on the lessee to make the improvements and in the absence of such obligation, the lessor cannot be said to have contracted for them, and his reversionary estate will not be held subject to liens for material and labor which enter into the improvements. But where, as in this case, no option is given the lessee, but he is compelled by his contract with the lessor to make certain alterations or forfeit his leasehold, the work should be regarded as being done under a contract with the lessor and the relationship thus established between the parties with respect to the improvement is analogous to that of owner and contractor and no reason can be perceived for saying that the unpaid accounts for material and work furnished under contract with the lessee should be denied the security of a lien against the estate of the lessor under the provisions of the mechanics' lien law, section 4203, Revised Statutes 1899." [Now section 3146, R. S. 1929.]

"Counsel for defendant concede in their brief that 'if the tenant as a part of the lease obligates and binds himself to make certain improvements, then in the making of the improvements, he is held to be acting for the landlord and the landlord is held to have consented to have the fee charged with the cost of the improvements', but insists that the provisions of the lease did not lay an obligation on the lessee to make the alterations. We think otherwise. The lease provided in express terms that the premises should be used for theater purposes

only. In the condition they were in at that time, they were wholly unsuited for such use. It is true the language employed in prescribing the general character and nature of the alterations which both parties intended should be made contains no stronger expression than that the lessee 'shall have the right' to make them, but the nature and location of the various changes are accurately described and it is stipulated that 'all improvements made by the said lessee as aforesaid shall be at his own expense and on his own account, and shall, at all times, be made under the direct supervision and subject to the approval of E. J. Eckel, architect; who was the agent selected by the owner to protect its interests to the end that the improvements when completed should be of the extent and character contemplated by the parties when the lease was made. How can it be said with show of reason that nothing more than a mere option was given to the lessee to make these alterations? He had to conduct a theater on the premises or forfeit his lease. He could not have used the premises for that purpose without making the alterations, and the parties agreed on just what should be done. They intended to make it obligatory on the lessee to make the improvements and that intention is clearly expressed in the written contract.''

6. It is not expressly provided in the lease in the instant case that the improvements to be made by the lessees were to be made under the direction and supervision of and made subject to the approval of an architect named who was the agent selected by the owner; nor was it expressly agreed in the lease in this case just what alterations and improvements should be made; but the agent of the appellant, in making the lease, was fully cognizant of the improvements made at the time they were being made and made no objection thereto. The only interpretation to which the lease is susceptible is that the remodeling and the improvements were permanent and were to remain as an indestructible part of the building after the termination of the lease and were not to be taken away by the lessees, for the reason (if no other) that they could not be taken away, and that such was so intended by the lessor. The character of the improvements entering into the remodeling renders any other construction impossible.

The remodeling and the improvements were not in the nature of ordinary repairs for which the lessees in the absence of a contract with the lessor would alone be liable but were permanent and substantial and beneficial to the interest of the owner, for which the interest of the owner is bound by the liens for the labor and the material entering into such.

7. The fact that the lessor was disappointed in the results attained by the improvements upon the value of the freehold and upon its betterment and was mistaken in its judgment with respect thereto

can furnish no reason why the respondents, who in good faith furnished the necessary labor and material for the improvements and for the construction and remodeling of the building on the property, should be deprived of their liens. [Curtin-Clark Hardware Co. v. Churchill, supra; Masterson v. Roberts, supra; Allen Estate v. Fred Boeke & Son, supra.]

8. We think that the contention of the appellant that no lien is given the respondents under Section 3156, Revised Statutes of 1929, for materials and labor used in the repairs incidental to the remodeling of the building is foreclosed by what was said in Allen Estate Association v. Fred Boeke & Son, supra, and in Curtin-Clark Hardware Co. v. Churchill, supra. In the case of Allen Estate Association v. Fred Boeke & Son, supra, the court, in disposing of a similar contention, said, on page 591 of 300 Mo.:

". . . These improvements having been made under the supervision of the lessor with the view of improving the property, and that result, as the facts show, having been accomplished, it is immaterial as a matter of fact whether the owner was ultimately benefited by the transaction. Under this view of the case the reversionary interest of the lessor having been shown, it is unnecessary to discuss the contention as to the effect of these improvements on the property at the end of the lease; or whether or not despite the improvements the lessor is now receiving a return from the property.

"While it is true that a tenant, as such, is not the agent of the owner to the extent that he may establish a lien against the land of the owner for improvements made by the tenant for his own benefit and at his own cost, nevertheless, if it appears that the owner has obligated the tenant to construct permanent and substantial improvements on the property beneficial to the reversionary interest of the owner, those furnishing labor or material for such improvements by virtue of contracts with the tenant have a right to mechanic's liens against the reversionary interest of the owner in the property improved. This general statement of the rule based upon facts parallel in all of their material features to those at bar, has been given express approval in Ward v. Nolde, supra, and in other cases in this court and the courts of appeals."

9. Nor do we consider that, because the lease recites that the lessees should take the property in the condition in which it was, such recital is conclusive. The lease at the same time provided the use to which the property should be put and required that $1500 to $2000 should be expended thereon by the lessees, the evident purpose of which was for the betterment of the freehold. The property at that time was wholly unsuited to the uses to which the lessees were required to put it or to any other profitable use. The only explanation

of the requirement for the expenditure of $1500 to $2000 by the lessees thereon is that they should put the property in a permanent condition for profitable use.

10. Nor do we consider appellant's contention that the lessees, in making the improvements in question, violated a provision of the contract by which they obligated themselves not to make any alterations in the premises without the consent of the lessor in writing as controlling. The lease itself requires the lessees to make expenditures on the property in a sum approximating $1500 to $2000 in improving the same. It did not limit the lessees to any specific changes or alterations. It must be considered as written authority by appellant for the alterations made.

11. Neither do we consider that the requirement in the lease that the lessees return the property at the termination of the lease in as good condition as received by them, usual wear and use excepted, evidences that the lessees are not required to turn over the improvements and repairs made. Considering the character of the improvements and repairs made, they are inseparable from the building on which they are made; and the lease is for two years only. To return the property at the end of two years, necessarily requires that the property be turned back with the improvements and repairs made thereon.

We are of the opinion that the facts in this case, as disclosed by the record, are controlled by what was said in the cases cited, from which quotations have been made, and that the contentions to the contrary by appellant are not well founded. The judgment of the trial court is affirmed. All concur.